UNITED STATES of America, Appellee,

v.

Pat BRUNK, a/k/a Marcie Johnson, Appellant.

No. 78-1459.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1978.

Decided Nov. 27, 1978.

Donald R. Cooley (on brief), of Smith & Cooley, Springfield, Mo., argued, for appellant.

David M. Rosen, Asst. U. S. Atty., St. Louis, Mo. (argued), and Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief, for appellee.

Before BRIGHT, STEPHENSON and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

Appellant, Pat Brunk, was indicted on two counts of mail fraud in violation of 18

U.S.C. § 1341.[1] The indictment alleged she had induced Roger Schmitt to mail her two checks totalling $270.00 in exchange for her fraudulent promise to keep the Federal Bureau of Investigation from calling Schmitt as a witness in a prostitution related criminal trial. After a jury trial,[2] Brunk was acquitted on Count II but was convicted on Count I and sentenced to eighteen months imprisonment. On appeal she first asserts that the district court erroneously overruled her motion for a mistrial based on the government's alleged improper impeachment of her testimony. Secondly, she contends the court denied her right to be present at all stages of the trial proceedings by considering and denying, without first giving her notice, a jury request to rehear certain taped evidence during its deliberations. Finally, she argues the case was improperly submitted to the jury because the government failed to prove a violation of the mail fraud statute. We affirm.

I.

The government introduced evidence at trial that Brunk was a prostitute who worked in a St. Louis prostitution ring operated by Pat Rich. Schmitt apparently met Brunk in 1975 while availing himself of her services and eventually developed a more serious relationship with her. He lived with and supported Brunk for a period of time, purchased a car for her, and on one occasion proposed matrimony. It was after the dissolution of this relationship that the events supporting the indictment for mail fraud occurred.

In August of 1977 Pat Rich was tried in federal district court in St. Louis for engaging in the interstate transportation of prostitutes. Schmitt had given a number of checks to Rich in return for the services of her prostitutes and followed the trial publicity with some interest. He was then living with his parents and feared they would learn of his general involvement with the Rich prostitution ring and of his former living arrangement with Ms. Brunk.

Brunk was aware of Schmitt's fears and informed him that his name was on material compiled by the FBI during its investigation of the *Rich* case. She then told him her "contacts" in the FBI could keep him from being called as a witness "for a price." Brunk had no knowledge of any FBI witness list or reports; yet she admitted having made these statements and that she had no way of preventing the FBI from calling Schmitt as a witness if such a list had existed.

Schmitt, in a somewhat confused and contradictory manner, testified that he mailed the two checks mentioned in the indictment to Brunk in return for her promised intervention with the FBI. Both checks were made payable to cash and were mailed to a post office box where Brunk regularly received her mail. The first check was allegedly used by Brunk to pay various bills and was the basis for her conviction on Count I. The check involved in Count II was used to purchase stereo components in a local electronics store. The owner of the store testified that Brunk had shopped there but was sure the check in question had not been cashed by a woman. Brunk was acquitted on Count II.

II.

In arguing that the trial court erred in overruling her motion for a mistrial based on the government's alleged improper

1. This section provides:

Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises . . . for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years or both.

2. The Honorable H. Kenneth Wangelin, United States District Judge, presiding.

impeachment of her trial testimony, Brunk contends the government, on cross-examination, asked her whether she had previously admitted she was a prostitute to FBI Agent Symonds; and that after her denial of this admission the government refused to call Agent Symonds to support its accusation. Such a question could well have prejudiced Brunk's defense since her credibility was an important factor in the case. Her position is that placing such prejudicial allegations before the jury by cross-examination without being prepared to prove them is reversible error. *See, e. g., Berger v. United States,* 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935); *United States v. Brown,* 519 F.2d 1368 (6th Cir. 1975).

It is unnecessary for this court to determine whether the government's failure to call Agent Symonds would have constituted reversible error had the objectionable question indeed been asked. Our study of the record reveals that it does not support Brunk's version of the government's line of questioning.[3]

Brunk did submit a motion to the district court to correct the record on appeal, charging that the prejudicial question had been inadvertently omitted from the trial transcript; but Judge Wangelin denied this motion after having the court reporter search for the missing question in his stenotype notes and in a tape recording of the trial proceedings. The reporter certified that government counsel never asked Brunk if she had previously admitted to Agent Symonds that she was a prostitute. We must, therefore, reject Brunk's arguments on this point. Federal Rule of Appellate Procedure 10(e).

### III.

■ Brunk's second assertion is that the district court erred in refusing the jury's request to rehear certain taped conversations relating to the mail fraud scheme without first giving her and her counsel notice and an opportunity to object. She argues this procedure violated her fifth and sixth amendment right to be present at all stages of the trial proceedings, as well as Fed.R.Crim.P. 43.

Approximately one hour after the jury retired to deliberate, it sent a note to the trial judge requesting that it be allowed to rehear tape recordings played at trial or that the transcripts of those recordings be sent to the jury room. The recordings contained conversations between Brunk and Schmitt allegedly relating to a list of checks written by Schmitt to Pat Rich and supposedly in the possession of the FBI. The trial judge, in refusing this request, simply told the jurors to rely on their memory of the recordings.

It is clear that the trial judge should have notified and consulted with Brunk and her counsel prior to denying the jury's request. As we stated in *United States v. Treatman,* 524 F.2d 320, 323 (8th Cir. 1975):

It is settled law that communications between judge and jury in the absence of and without notice to defendant and his counsel are improper. *Jackson v. Hutto,* 508 F.2d 890, 891 (8th Cir. 1975). The appellant's right to be present is constitutionally guaranteed by both the Fifth and Sixth Amendments to the federal constitution. *Id.* However, although such communications create a presumption of

---

**3.** The government's cross-examination of Ms. Brunk contained the following questions concerning her occupational status.

[Counsel] Q. When was it that you met Pete Symonds first?

[Brunk] A. Met Pete Symonds, was in January of '77.

Q. And aside from that first meeting have you talked with him on any other occasion?

A. Have I talked to him? Yes I did.

Q. Have you ever told him what profession, if any, you held at the time you were speaking with him?

A. Profession?

Q. Job.

A. As a manager of a mobile home court, yes.

Q. Did you ever tell him any other profession at any other time?

A. Once I was an apprentice in a beauty shop, I told him that.

Q. And that was it?

A. Yes.

It is apparent that the above line of questioning does not support Brunk's version of her cross-examination.

prejudice, *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975); *Jackson v. Hutto, supra*, 508 F.2d at 892, such presumptions 'may be overcome by evidence giving a clear indication of lack of prejudice.' *Rice v. United States*, 356 F.2d 709, 717 (8th Cir. 1966) . . .

Thus, we must decide whether the presumption of prejudice created by the district court's action is overcome by clear evidence indicating a lack of prejudice. In *Treatman*, for example, we determined this presumption was not rebutted because the district court, without notice to the defendant, changed the wording of one of the jury instructions in such a way as to create "fundamental error." *Id.* at 323. In *Jackson v. Hutto*, 508 F.2d 890, 892 (8th Cir. 1975), on the other hand, we stressed that "[t]he courts are almost uniform in holding that such communications, although presumptively prejudicial, may be shown to constitute harmless error. . . ." There the trial judge, counsel for defendant, and the prosecutor—but not the defendant—made several trips to the jury room during which the trial judge answered the jury's questions concerning the instructions. Eventually, the trial judge recalled the jury to the courtroom and reread the instructions in their entirety. The instructions and answers given by the district court were correct, however, and this court found that the defendant "suffered no prejudice from these unusual colloquies" and refused to set aside his conviction. *Id.* at 892.

In this case we are likewise convinced that the procedure followed by the district court, although presumptively prejudicial, was harmless error because of clear evidence indicating a lack of prejudice. It was well within the discretion of the trial judge to determine that the jury should not be allowed to rehear the recordings. A second hearing or access to the tape transcripts

might have caused the jury to place undue emphasis on this single piece of evidence in reaching its determination. And, while we do not approve of the manner in which the jury's request was handled,[4] we cannot find any way in which Brunk was prejudiced by it. There is certainly no indication that the jury was misled or otherwise confused by the court's response. Consequently, we must also reject Brunk's arguments on this point.

### IV.

■ Brunk's final contention is that the case was improperly submitted to the jury because the government failed to prove a violation of the mail fraud statute. In particular, she asserts the evidence failed to show "any scheme or artifice to defraud" which she carried out by means of "false or fraudulent pretenses, representations, or promises . . . ." 18 U.S.C. § 1341. Her defense at trial was that the government, at best, proved only that she had extorted money from Schmitt by threatening to reveal her former relationship with him to his parents. Although she admitted making the false representations concerning the FBI witness list, she alleged these representations were made only *after* Schmitt mailed the two checks mentioned in the indictment. If this fact were true, there would, of course, be no false representation upon which to base the mail fraud conviction relating to the check involved in Count I.

In considering Brunk's assertion that the government's case was insufficient to support her conviction, we must review the evidence in the light most favorable to the government and draw all reasonable inferences in support of the jury verdict. *United States v. Lanier*, 578 F.2d 1246, 1249 (8th Cir. 1978); *United States v. Bass*, 472 F.2d 207, 213 (8th Cir.), *cert. denied*, 412 U.S. 928, 93 S.Ct. 2751, 37 L.Ed.2d 155 (1973).

---

4. There is much to be said for the constitutional and statutory requirement that the trial judge consult with the defendant and his counsel before answering any jury request. This procedure helps to insure that the court will

reach a just and correct result. In *Treatman, supra*, 524 F.2d at 323, we noted that defense counsel, not being present, did not have an opportunity to point out the fundamental error in the instructions given by the trial court.

After thoroughly examining the evidence presented in this case, we are convinced that it was sufficient to support the jury's verdict of guilty on Count I of the indictment.

Schmitt testified that Ms. Brunk was a prostitute who worked for Pat Rich and had formerly lived with him for a period of time. Brunk admitted having lived with Schmitt and knew of his fears concerning his parents. And Schmitt flatly stated he mailed Brunk the two checks mentioned in the indictment in return for her promise to keep him from being called as a witness in the *Rich* trial. It is true that Brunk's counsel, on cross-examination of Schmitt, brought out an apparent inconsistency in his testimony. He had previously testified before a grand jury that the payments he made during the period in which he mailed the two checks were intended to keep Brunk from telling his parents about their relationship and not "to keep the FBI away."

It was, however, the function of the jury to reconcile this inconsistency. The jury was properly instructed on the elements of the crime and determined that Brunk had defrauded Schmitt in obtaining the first check. As the Supreme Court has stated, it is not proper for an appellate court "to weigh the evidence or to determine the credibility of witnesses. The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Here the direct testimony of Schmitt, when bolstered by Brunk's own admission that she had engaged to some extent in the fraudulent "witness list" scheme, was clearly sufficient to support the jury's verdict. And, for the purpose of sustaining this verdict, it is irrelevant that the over-all scheme to

defraud was accompanied by an attempted extortion. *See, e. g., Muench v. United States*, 96 F.2d 332, 335 (8th Cir. 1938). Therefore, we reject Brunk's final argument.

Affirmed.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent.

The majority correctly states the rule that any communication between judge and jury in the absence of and without notice to the defendant and his counsel creates a presumption of prejudice. *See United States v. Treatman*, 524 F.2d 320, 323 (8th Cir. 1975); *Jackson v. Hutto*, 508 F.2d 890, 892 (8th Cir. 1975). Yet the majority then finds no reversible error because "we cannot find any way in which Brunk was prejudiced" by the communication here. At 913. I disagree.

When an improper communication between judge and jury is established, we are not called upon to identify a way in which the defendant was prejudiced, nor need the defendant specify any particular type of prejudice, because prejudice is *presumed*. The Government then bears the burden of showing that such improper communication was harmless beyond a reasonable doubt. *Cf. Blackwell v. Brewer*, 562 F.2d 596, 599–600 (8th Cir. 1977) (violation of defendant's sixth amendment right to be present during trial judge's questioning of jurors). We have said that the presumption of prejudice arising from a judge's ex parte communication with the jury " 'may be overcome by evidence giving a clear indication of lack of prejudice.' " *United States v. Treatman*, 524 F.2d 320, 323 (8th Cir. 1975); *Rice v. United States*, 356 F.2d 709, 717 (8th Cir. 1966).[5] I find no such evidence in the record of this case.

---

5. For example, in *Jackson v. Hutto*, 508 F.2d 890 (8th Cir. 1975), we held that the judge's supplementary instructions in response to jury inquiries in the absence of the defendant were harmless error. The presumption of prejudice arising from the communication in *Jackson* was overcome by the following showing: de-

fendant's counsel and the prosecutor were present at all times during the communications; the judge's replies to the jury's inquiries were clearly correct; and the jury resolved its initial confusion as to whether it might convict on only one count rather than on several counts in favor of the defendant.

In this case, the majority observes that the trial court acted within its discretion in denying the jury's request to rehear certain tape recordings. Granted that a trial judge's decision whether to allow a jury to rehear or reexamine evidence during its deliberations is a discretionary one, *see, e. g., United States v. King,* 552 F.2d 833, 850 (9th Cir. 1976); *United States v. Carson,* 464 F.2d 424, 436–37 (2d Cir.), *cert. denied,* 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); *Hamilton v. United States,* 139 U.S. App.D.C. 368, 372, 433 F.2d 526, 530 (1970), *cert. denied,* 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971), such discretion ought to be exercised only after hearing the positions of the parties. The recording represented critical evidence bearing on Brunk's alleged fraudulent representations.[6] If the trial court had advised both counsel of the jury's inquiry, they might have agreed to a replay of the crucial tape recordings, and if not, either attorney might have persuaded the court of the propriety of such replay to the jury under the circumstances then existing.

Without notification to the parties and without giving the defendant, Brunk, an opportunity to be heard, the court here refused the jury's request to rehear evidence. That decision, in my judgment, cannot be said to be nonprejudicial to Brunk.

I would reverse.

---

6. The most contested issue in this case concerns whether Schmitt sent Brunk money out of fear that Brunk would expose their relationship to Schmitt's parents or because Brunk *fraudulently offered to keep Schmitt's name* out of the FBI witness lists. Schmitt's testimony on this issue, as the majority indicates, was "confused and contradictory," and the only other pertinent evidence was the recorded phone conversation between Schmitt and Brunk which the jury asked to rehear. By refusing the jury's request to rehear the recordings in the absence of and without notice to defendant and her counsel, the trial court deprived the jury of information which the jury apparently felt it needed to resolve the confusion in Schmitt's testimony.