Richard DIXON, Appellant,

v.

STATE of Alaska, Appellee.

No. 3810.

Supreme Court of Alaska.

Jan. 18, 1980.

Walter L. Carpeneti, Asst. Public Defender, Juneau, and Brian Shortell, Public Defender, Anchorage, for appellant.

Michael J. Stark, Asst. Dist. Atty., Juneau, Thomas Wardell, Dist. Atty., Kenai, and Avrum M. Gross, Juneau, Atty. Gen., for appellee.

Before RABINOWITZ, C. J., BOOCHEVER, BURKE and MATTHEWS, JJ., and DIMOND, Senior Justice.

## OPINION

RABINOWITZ, Chief Justice.

Richard Dixon was indicted and convicted, after trial by jury, of the crime of rape in violation of AS 11.15.120(a)(1). The incident which led to his conviction occurred on the evening of October 9, 1976, in Soldotna. On that evening, Dixon met the complaining witness in a bar in Soldotna, where she had stopped to attempt to locate a fellow employee with whom she was traveling on business from Anchorage to Homer. Dixon and the complaining witness left the bar together in Dixon's car and dined in a restaurant located a short distance from the bar. The complaining witness asserts that on the way back to the bar after dinner the rape occurred. Dixon's defense to the charge was that the complaining witness had consented to the act of intercourse.

Dixon's first point in this appeal is that the superior court erred in responding to a written communication from the jury during its deliberations requesting a playback of certain testimony without notifying him or either counsel of the communications and without allowing the parties to be present and to be heard on the matter.

Approximately two and one-half hours after the jury began its deliberations, a note signed by the foreman was sent to the court. The note requested the playback of the complaining witness' testimony as well as Dixon's testimony.[1] Without consultation with either counsel or Dixon, the trial judge sent a return note to the jury informing them that while he would not allow them to hear all of the requested testimony over again, if they would designate the portions of the testimony concerning which there was disagreement, he would attempt to locate those portions of the testimony and play them back to the jury.[2] Approxi-

---

1. The jury's note read:

    Judge Hanson
    It has been requested by 2 members of the panel that they hear . . . [the complaining witness'] testimony and cross-examination—also the same on Mr. Dixon—would this be possible
        [signed by the jury foreman]

2. The superior court's written response to the jury's note stated in full:

    Mr. Sheppard:
    I cannot allow all of the testimony of a witness to be replayed. If there is specific disagreement among jurors on a particular portion of a witness' testimony, we will attempt to locate that testimony and play it

mately one hour later, the jury sent a note to the judge, which stated: "Judge Hanson: We need nothing more at this time apparently. Thank you [signed by the jury foreman]." A verdict of guilty was returned some five hours after this final communication from the jury.

■ Under both the United States Constitution and the Alaska Constitution the right of the defendant to be present at every stage of the trial has been recognized.[3] Included within the scope of this right is the period of jury deliberations; thus, the defendant has the right to be present whenever any communication between the court and the jury occurs during those deliberations.[4] In Alaska, this constitutional right has been further implemented by the provisions of Criminal Rule 38(a) which provide:

*Presence Required.* The defendant shall be present at the arraignment, at

the preliminary hearing, at the time of plea, at the omnibus hearing, and at every stage of the trial, including the impaneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule.[5]

Given the foregoing, and this court's decisions on the point, the state has appropriately conceded that it was error for the superior court to have communicated to the jury without counsel and Dixon present.[6] However, this concession is not dispositive of the issue in the appeal for it remains to be determined whether the error was prejudicial or harmless. In past decisions involving improper judge/jury communications, we have expressly rejected a *per se* reversibility standard. Rather, we have applied the normal standard of reversibility for an error of constitutional magnitude, namely, the "harmless beyond a reasonable doubt" standard of *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).[7]

back for you. If such disagreement exists, please set it out as specifically as you can. (e. g., 'did witness A say so and so' or did he say 'such and such'?)
[signed by Judge Hanson]
Please preserve all of your questions and my answers and return them when your deliberation is over.

**3.** Under the federal constitution, the United States Supreme Court has treated the accused's right to be present either as related to the confrontation clause of the sixth amendment or under the 14th Amendment's due process clause. *See, e. g., Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970); *Dowdell v. United States,* 221 U.S. 325, 331, 31 S.Ct. 590, 592, 55 L.Ed. 753, 757 (1911); *Lewis v. United States,* 146 U.S. 370, 373, 13 S.Ct. 136, 137, 36 L.Ed. 1011, 1013 (1892). In Alaska, the right to be present at every stage of the trial also is founded in the state constitutional rights of the accused to due process and to confront the witnesses against him. Alaska Constitution art. 1, §§ 1 & 7. *See State v. Hannagan,* 559 P.2d 1059 (Alaska 1977).

**4.** *Rogers v. United States,* 422 U.S. 35, 39, 95 S.Ct. 2091, 2094, 45 L.Ed.2d 1, 6 (1975); *Shields v. United States,* 273 U.S. 583, 47 S.Ct. 478, 71 L.Ed. 787 (1927); *United States v. Clavey,* 565 F.2d 111 (7th Cir. 1977), *cert. denied,* 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345

(1978); *United States v. Benavides,* 549 F.2d 392 (5th Cir. 1977); *Bustamante v. Eyman,* 456 F.2d 269 (9th Cir. 1972); *State v. Hannagan,* 559 P.2d 1059 (Alaska 1977); *Gafford v. State,* 440 P.2d 405 (Alaska 1968); *Noffke v. State,* 422 P.2d 102 (Alaska 1967).

**5.** Alaska R.Crim.P. 38(a) (essentially similar to Federal R.Crim.P. 43). *See Brown v. State,* 372 P.2d 785 (Alaska 1962). *See also Koehler v. State,* 519 P.2d 442 (Alaska 1974); *Lee v. State,* 509 P.2d 1088 (Alaska 1973); *R.L.R. v. State,* 487 P.2d 27 (Alaska 1971).

**6.** *See, e. g., Cox v. State,* 575 P.2d 297 (Alaska 1978) (involving an *ex parte* communication by the judge to the jury in response to their request for the playback of certain testimony). *See also Aillon v. State,* 168 Conn. 541, 363 A.2d 49, 53 (1975):

It has thus become a universally accepted principle that communications between a judge and a jury, especially after the jury has begun deliberations, should be made only in open court in the presence of the parties.

**7.** *See Richardson v. State,* 579 P.2d 1372, 1374 (Alaska 1978); *Cox v. State,* 575 P.2d 297, 300 (Alaska 1978); *State v. Hannagan,* 559 P.2d 1059, 1064 (Alaska 1977). *Cf. Noffke v. State,* 422 P.2d 102, 105 (Alaska 1967), which was decided prior to *Chapman* and held that the error must affect a substantial right of the defendant to be reversible.

*State v. Hannagan,* 559 P.2d 1059 (Alaska 1977), is of significance.[8] In that case, we held that the defendant's absence from the courtroom during the playback of the testimony was harmless beyond a reasonable doubt. In reaching this conclusion, we said:

> The playback involved no rights to confront witnesses or cross-examine witnesses and was not a situation in which polling of the jury would be appropriate. The reason the jury would be appropriate. In the presence of the jury, counsel for Hannagan attempted to waive Mr. Hannagan's rights to be present, and the district attorney concurred in this result. The trial court indicated its willingness initially to wait until morning when Mr. Hannagan would be present. Under these circumstances, we believe that it was made sufficiently clear to the jury that Mr. Hannagan had not absconded from the jurisdiction or defied an order of the court to be present so as to create an unfavorable impression to the jury. There is no allegation here that there was communication between the court and the jury without counsel for both sides present. This case does not involve reinstruction of the jury on matters of law. We do not think that the psychological effects of defendant's absence during a 45-minute replay merits retrial in this case.

*Id.* at 1066.

However, in *Richardson v. State,* 579 P.2d 1372 (Alaska 1978), which also involved the playback of testimony in the absence of the defendant, we determined that the error was not harmless. The distinguishing features of the *Richardson* case were that the trial judge, counsel and the defendant all were absent from the playback proceeding (apparently only the jury, the bailiff and an in-court deputy were present), and no independent record was made of the replay

proceedings. In those circumstances, we concluded that the state had not established that the error was harmless beyond a reasonable doubt because there was no record to indicate which portions of the witnesses' testimony were replayed, whether any non-jurors present in any way communicated with the jury, or whether the jury communicated among themselves or with anyone else during the proceeding. We suggested that had the trial judge, counsel, and Richardson been present, objections or suggestions might have been made which would have affected the trial court's decision in determining which portions of the testimony were to be replayed to the jury.

*Cox v. State,* 575 P.2d 297 (Alaska 1978), was decided a few months prior to *Richardson.* In *Cox,* the jury had communicated to the trial court a desire to hear a playback of a portion of the testimony of two witnesses whose testimony had supported the defendant's alibi defense. The trial court apparently instructed the bailiff to reply to the jury that though their request was denied at that time (it was one-half hour from the jurors' scheduled dinner hour), if the jury still wanted to hear the testimony after they returned from dinner, they should renew their request at that time. Neither the defendant nor his attorney was notified of the request and the court's response until after the verdict was returned. In finding that the *ex parte* communications between the judge and the jury were not harmless error, we emphasized in *Cox* the fact that no *electronic* recording was made of the trial court's communication to the jury through the bailiff and the additional fact that the testimony which the jury had sought to have replayed was crucial to Cox's defense. We stated:

> In the case at bar, the superior court's response, transmitted through the bailiff, related directly to the issue of whether

---

8. In *Hannagan,* the jury sent a note to the judge during its deliberations which requested the playback of certain testimony. In the defendant's absence, the trial court granted the request and the playback was made. On appeal we held that even though the defendant's counsel was present and had attempted to waive the defendant's right to be present, the waiver was ineffective since it did not conform to the constitutional mandate that the right be personally exercised by the defendant or with his express consent. *See Lee v. State,* 509 P.2d 1088 (Alaska 1973).

the jury's playback request would be honored. Since no electronic recording was made of the trial court's communication to the jury, through the bailiff, we have no way of ascertaining precisely what was communicated to the jury by the bailiff. Thus, the possibility cannot lightly be dismissed that the superior court's response may have implied—even unintentionally—to the jury that they need not listen to the playback of the witnesses' testimony. Based upon the affidavits to which we have previously alluded, the trial court's response to the jury's request was equivocal—even when viewed in its most favorable light.

Further, the recorded evidence which the jury sought to have played—testimony of two alibi witnesses—was crucial to Cox's defense; of particular importance was their testimony as to the times involved. In the words of appellant, 'No other testimony presented by [him] during the trial was a[s] crucial to his defense. If believed, the jury must have acquitted. No person can be at two places at the same time.' Had Cox and his attorney been made aware of the request, the superior court might have determined that the playback was more important than the jurors' dinner plans. It is even more likely that counsel or Cox could have had sufficient input to persuade the superior court to allow the playback without renewed request. At the very least, Cox and his attorney would have had the opportunity to help formulate the wording of the court's response to the jury. We thus conclude that the superior court's *ex parte* communication to the jury, in violation of Cox's rights under Criminal Rule 38(a), cannot be considered harmless error beyond a reasonable doubt. Therefore, the matter must be remanded for a new trial.

*Id.* at 300–01 (footnote omitted).

In order to assess any prejudice to Dixon, it is necessary to review the nature of a jury's request to rehear trial testimony and of a trial court's discretion in granting or denying such a request. As we said in *Price v. State,* 437 P.2d 330, 334 (Alaska 1968) (footnote omitted):

There is no uniform rule in the courts on the question of whether testimony may be read to or reheard by the jury. Some jurisdictions disapprove of such a practice, others permit it by statute, while others, and probably the majority, leave the matter to the sound discretion of the trial court.

We are of the view that absent circumstances requiring denial of a jury request to rehear trial testimony, the determination of which should be left to the discretion of the trial judge, justice is more likely to be promoted than obstructed if the jury, at its request, is allowed to rehear the electronic recording of specific testimony given at the trial.

In. *Price,* we quoted, with approval, the following views of the New Jersey Supreme Court:

When a jury retires to consider their verdict, their discussion may produce disagreement or doubt or failure of definite recollection as to what a particular witness said in the course of his testimony. If they request enlightenment on the subject through a reading of his testimony, in the absence of some unusual circumstance, the request should be granted. The true administration of justice calls for such action. Where there is a doubt in the minds of jurors as to what a witness said, it cannot be prejudicial to anyone to have that doubt removed by a rehearing of his testimony. There is no need to be chary for fear of giving undue prominence to the testimony of the witness. If under our system of trials a jury is to be considered intelligent enough to be entrusted with powers of decision, it must be assumed they have sense enough to ask to have their memories stimulated or refreshed only as to those portions of the testimony about which they are in doubt or disagreement. It must be assumed also that if they had any similar doubts or disagreement about statements of other witnesses they would seek the same remedy. If they do not ask for further reading there is no right in a

party to demand it. The matter must be left in the sensitive discretion of the trial judge. He may inquire if they wish to hear the testimony of any other witness, whether or not a party suggests it. But he should not burden a jury with unnecessary reading they do not indicate a need to hear, and it is not error to decline to read further portions of the evidence simply because a party so demands. But generally where the testimony is reasonably available, a judge should not refuse to grant a jury request to have it read merely because the reading would take time. In these days when the purpose of our procedure is full, fair and free exposure of all relevant evidence in a case both before and during the trial, there is no just reason for insisting that layman jurors must have an unfailing and unanimous memory of all the testimony they hear in the courtroom.

*Id.* at 334–35, *quoting State v. Wolf,* 44 N.J. 176, 207 A.2d 670, 675–76 (1965). *See also Ripley v. State,* 590 P.2d 48, 51–52 (Alaska 1979).

Alaska's perspective on such jury requests is similar to that adopted by the ABA Standards Relating to Trial by Jury (Approved Draft, 1968), which, in section 5.2(a), suggest that a court should provide requested testimony to the jury "[w]henever the jury's request is reasonable." Concurring with the rationale of the New Jersey court in *Wolf,* as quoted above, the commentary to this ABA Standard recognizes a trial court's discretion in this regard, but suggests that "its discretion to deny jury review of evidence is strictly limited." [9]

■ A jury's request to review evidence during its deliberations obviously raises questions of great importance to a criminal defendant's rights, as it generally reflects doubt or disagreement on the part of at least some jurors as to the nature of evidence presented at trial. While the final decision as to the appropriate response to such a jury request is left to the trial court's discretion, we think it critically important that the defendant and his counsel be notified of the request. They should be allowed to consult with the trial court and to offer comments, suggestions, and objections to guide both the substance and phrasing of the court's response to the jury's request. *Richardson v. State,* 579 P.2d 1372, 1374 (Alaska 1978); *Cox v. State,* 575 P.2d 297, 301 (Alaska 1978).[10] We think it

9. Section 5.2 of the ABA Standards Relating to Trial by Jury (Approved Draft, 1968) provides:
   Jury request to review evidence.
   (a) If the jury, after retiring for deliberation, requests a review of certain testimony or other evidence, they shall be conducted to the courtroom. Whenever the jury's request is reasonable, the court, after notice to the prosecutor and counsel for the defense, shall have the requested parts of the testimony read to the jury and shall permit the jury to reexamine the requested materials admitted into evidence.
   (b) The court need not submit evidence to the jury for review beyond that specifically requested by the jury, but in its discretion the court may also have the jury review other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested.
   This standard is retained in identical language in Standard 15–5.2 of the 1978 second edition tentative draft of the ABA Standards. Rule 533 of the Uniform Rules of Criminal Procedure (1974) suggests a rule which is substantively the same as that in the ABA Standards. Some jurisdictions, either by statute or common law, have even further limited a trial

court's discretion *to refuse such a jury request.* See, e. g., *Gardner v. State,* 569 S.W.2d 74, 85 (Ark.1978) (en banc), *cert. denied,* 440 U.S. 911, 99 S.Ct. 1224, 59 L.Ed.2d 460 (1979) ("better approach is for the trial court to honor any request of a jury to hear specific evidence, in the absence of some compelling reason why it should not be granted"); *People v. Butler,* 47 Cal.App.3d 273, 120 Cal.Rptr. 647 (1975) (Cal. Penal Code § 1138 providing jury right to review evidence).

10. *See United States v. Artus,* 591 F.2d 526, 528 (9th Cir. 1979) (per curiam) ("The interchange between jury and judge should be surrounded with formalities so that the Defendant has an adequate opportunity to evaluate the propriety of the proposed response or instruction, formulate objections, or suggest a different response.") *See also United States v. Schor,* 418 F.2d 26, 29–30 (2nd Cir. 1969); *Slinsky v. State,* 232 So.2d 451, 453–54 (Fla.App. 1970); *State v. Pokini,* 55 Haw. 640, 526 P.2d 94, 105 (1974). *Cf., Koehler v. State,* 519 P.2d 442, 446 (Alaska 1974) ("And while the judge has discretion to discharge the jury for their inability to agree, the majority of courts reason

necessary that the trial court's response be subjected to some degree of adversarial scrutiny, both to assure the preservation of the confidentiality of jury deliberations [11] and to minimize the possibility that the trial court's response will place such a burden on the inquiring jurors, who may constitute only a minority of the panel, as to discourage the resolution of doubt or conflict among the jurors as to the import of specific evidence presented at trial. These concerns strongly implicate a defendant's due process rights to a fair trial.[12]

Because of the importance of jury requests such as the one in this case, the Florida Supreme Court has recently concluded that "[a]ny communication with the jury outside the presence of the prosecutor, the defendant, and defendant's counsel is so fraught with potential prejudice that it cannot be considered harmless." *Ivory v. State*, 351 So.2d 26, 28 (Fla.1977).[13] While we adhere to our view that *ex parte* communication between judge and jury does not mandate reversal in every case,[14] we

conclude that in this case the state has not met its burden of proving harmlessness beyond a reasonable doubt.[15]

The testimony which at least two jurors wished to rehear was that of the defendant and the prosecutrix. This testimony can only be termed crucial, since the resolution of the issue of consent to intercourse for the most part rested on the jury's assessment of the conflicting testimony of these two witnesses. The trial judge's response, informing the jury that he could not allow them to hear "all of the testimony of a witness to be replayed" and suggesting that the jury narrow its request, may have caused the jury to abandon that request, particularly as it may have placed considerable pressure on the minority of two members of the panel who apparently initiated the request. Had the defendant been present and his counsel allowed the chance to influence the trial court's decision, the trial court might have been persuaded to allow the jury's request or to phrase his preference for a narrower request in less absolute terms. While we do

that the accused and his counsel, by being present and participating in the discharge decision, may have a significant impact on the court's exercise of its discretion.")

11. *See, e. g., Elisovsky v. State*, 592 P.2d 1221, 1228–29 (Alaska 1979) (discussing permissible scope of inquiry into jury deliberations and conduct).

12. *See, e. g., Bustamante v. Eyman*, 456 F.2d 269, 271–74 (9th Cir. 1972); *Aillon v. State*, 168 Conn. 541, 363 A.2d 49, 53 (1975) (right to be present of constitutional dimensions, since it involves the right to a fair trial in a fair tribunal, which is "the very foundation of due process").

13. The jury in *Ivory* made requests for several types of information including the defendant's statement and a medical examiner's report. The trial judge responded to the requests without notifying or consulting the defendant or counsel. *Ivory v. State*, 351 So.2d 26, 27 (Fla. 1977). The Florida court adopted the following rule:

We now hold that it is prejudicial error for a trial judge to respond to a request from the jury without the prosecuting attorney, the defendant, and defendant's counsel being present and having the opportunity to participate in the discussion of the action to be taken on the jury's request. This right to participate includes the right to place objec-

tions on record as well as the right to make full argument as to the reasons the jury's request should or should not be honored. *Id.* at 28. *See also Isley v. State*, 354 So.2d 457 (Fla.App.1978).

The Hawaii Supreme Court also adopted a *per se* reversibility rule in light of a statutory requirement interpreted to that effect. *State v. Pokini*, 55 Haw. 640, 526 P.2d 94, 105–07 (1974). However, in light of the intervening repeal of the relevant statute, the court indicated that it would apply harmless beyond a reasonable doubt analysis in future cases. *Id.* 526 P.2d at 107.

14. *See, e. g., State v. Gray*, 67 N.J. 144, 336 A.2d 486, 488–89 (1975) (error in refusing jury's request to see photographs without consulting defendant and counsel not reversible, since photographs had not been admitted in evidence and, therefore, could not have been given to jury). Most jurisdictions have rejected a rule of *per se* reversibility. *See generally* Annot., 41 A.L.R.2d 227, §§ 14–16 (1955 & April 1979 Supp.).

15. *See Richardson v. State*, 579 P.2d 1372, 1374 (Alaska 1978). *See also, e. g., Bustamante v. Eyman*, 456 F.2d 269, 271 (9th Cir. 1972) (burden on prosecution to show that *ex parte* judge-jury communications were harmless beyond a reasonable doubt).

not reach the question whether the trial court's response in itself amounted to an abuse of discretion,[16] we hold that in the circumstances presented here the superior court committed reversible error by responding to the jury's request out of the presence of and without consultation with the defendant and his attorney.[17]

**16.** The general guidelines for a trial court's discretion in this regard have been outlined in the text *supra.* We recognize that it may be appropriate for a trial judge in certain situations to request or require a narrowing of an unreasonably broad jury request to review evidence. *See, e. g., Swindell v. State,* 491 S.W.2d 400, 401 (Tex.Cr.App.1973) (deciding under statutory formulation that trial court "properly refused" jury request for all testimony by defendant and prosecutrix, and required jury to narrow request). The commentary to section 5.2(a) of the ABA Standards Relating to Trial by Jury (Approved Draft, 1968), note 9 *supra,* suggests the following approach:

> Most courts have taken the view that a jury request for review of evidence cannot be refused solely on the ground that it would take too much time. Section 5.2(a) is consistent with this view, although the second sentence should be read as permitting the trial judge to exercise some control in this regard. In the unlikely event that the jury requests a reading of a substantial portion of the testimony given at trial, the court is under no obligation to grant the request. Rather, he should inquire further into the precise matters as to which there is disagreement or lack of recall, and then should see that the jury reviews that evidence which is relevant to those matters.

*Id.* at 137 (citations omitted).

**17.** In concluding that reversal is necessary, we note the similarity between the circumstances in this case and those which were held to require reversal in *Cox v. State,* 575 P.2d 297 (Alaska 1978). In both *Cox* and the present case, the trial judge responded to a jury request to review evidence in a way which placed restrictions on the jury's ability to rehear the recorded testimony requested without notification and consultation with the defendant or his attorney. In both cases, the jury returned a verdict without the benefit of the requested review of evidence after the limitations placed by the trial judge were communicated to them.

We note that numerous opinions involving similar circumstances support our opinion that reversal is required. *See, e. g., United States v. Artus,* 591 F.2d 526 (9th Cir. 1979) (per curiam); *United States v. Schor,* 418 F.2d 26 (2nd Cir. 1969); *People v. Briggman,* 21 Ill.App.3d 747, 316 N.E.2d 121 (1974); *People v. Harmon,* 104 Ill.App.2d 294, 244 N.E.2d 358 (1968); *People v. Ramsey,* 40 A.D.2d 837, 337 N.Y.S.2d 332 (1972). *See also United States v. Clavey,* 565 F.2d 111, 125–26 (7th Cir. 1977) (Swygert, J., dissenting), *cert. denied,* 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978). Furthermore, other cases finding the absence of the defendant during judge-jury communications of this sort to be harmless error rely on the fact that the defendant's counsel was present and was allowed to represent the defendant's interests in the process by which the judge decided on an appropriate response. *See, e. g., United States v. Nelson,* 570 F.2d 258 (8th Cir. 1978); *United States v. McNair,* 140 U.S.App.D.C. 26, 433 F.2d 1132 (1970) (per curiam); *Ware v. United States,* 376 F.2d 717 (7th Cir. 1967); *People v. Pierce,* 9 Ill.App.3d 153, 291 N.E.2d 58 (1972), *aff'd,* 56 Ill.2d 361, 308 N.E.2d 577 (1974); *People v. Lewis,* 73 Ill.App.3d 361, 25 Ill.Dec. 436, 386 N.E.2d 910 (1979); *People v. Solomon,* 82 Mich.App. 502, 266 N.W.2d 453 (1978). *See also State v. Hannagan,* 559 P.2d 1059, 1066 (Alaska 1977) ("There is no allegation here that there was communication between the court and the jury without counsel for both sides present.")

The commentary to section 5.2(a) of the ABA Standards Relating to Trial by Jury, note 9 *supra,* recognizes the common requirement that the defendant be present, but notes that section 5.2(a) requires notice to both the prosecutor and defense counsel and "takes no view as to whether it is necessary or appropriate to have the defendant present." *See also Golf v. State,* 261 Ark. 885, 552 S.W.2d 236 (1977) (en banc) (prejudicial error for trial judge to respond to jury's questions in presence of defendant, but with defense counsel absent). While in many cases defense counsel's presence and participation may eliminate the possibility of prejudice, we reiterate that the presence of the defendant during judge-jury communications is a requirement of constitutional dimensions, and we decline to adopt a rule that the presence of counsel would render the absence of the defendant *per se* harmless. *Accord, Bustamante v. Eyman,* 456 F.2d 269, 274 (9th Cir. 1972). *See also Ware v. United States,* 376 F.2d 717 (7th Cir. 1967) (dissenting opinion).

We recognize that there are opinions which, though recognizing the desirability of consultation between the trial judge and the defendant and his or her counsel, hold a judge's response refusing a jury request for information without such consultation to be harmless error. The reasoning of these cases is apparently that where the judge's response is within his or her discretion, there is no prejudice to the defendant. *See United States v. Brunk,* 587 F.2d 910, 912–13 (8th Cir. 1978); *United States v. Mesteth,* 528 F.2d 333, 335 (8th Cir. 1976); *United States v. Reynolds,* 489 F.2d 4, 7–8 (6th Cir. 1973), *cert. denied,* 416 U.S. 988, 94 S.Ct. 2395,

■ One other issue in this appeal remains to be decided. Dixon asserts that the delay of nearly five months between the occurrence of the event in dispute on October 9, 1976, and the return of the indictment on March 4, 1977, prejudiced his defense and effectively denied him due process of law.[18] This court has previously recognized that in addition to the protection afforded by the applicable statute of limitations, the guarantees of due process of law under the Alaska Constitution also serve to protect a defendant against the hazards of pre-indictment delay.[19] *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972), established that two factors are relevant in deciding whether a substantial delay between the commission or discovery of an alleged offense and the initiation of formal charges constitutes a denial of due process; namely, the reasonableness of the delay and the probable prejudice attributable to the delay.[20] *Marks* held that:

> In order to assess a claim of due process deprivation, the governmental interest in postponing accusation must be weighed against the defendant's interest in early notice of the charges against him. In sum, both the absence of a valid reason for preaccusation delay and the fact of

prejudice must be established in order to support a due process claim.

*Id.* The defendant bears the ultimate burden of proof on both the absence of a valid reason for the delay and the fact of prejudice.[21] "That the ultimate burden is on the defendant, however, does not mean that the state is relieved of the burden of coming forward with reasons for the delay, matters normally within the exclusive knowledge of the state. Rather, the defendant must show that the reasons so advanced do not justify the delay." [22]

■ Here the state has attempted to justify the five month pre-indictment delay by establishing that investigation of the alleged rape incident was continuing in two different parts of the state up until shortly before the indictment against Dixon was returned. Shortly after the alleged rape occurred on the evening of October 9, 1976, the victim made contact with Officer Mike Wilson of the Soldotna Police Department. She declined to sign the complaint against Dixon at that time, but apparently reconsidered and contacted the district attorney's office upon returning to her home in Juneau three days later. The district attorney's office contacted Investigator Kaiser of the Alaska State Troopers and asked

40 L.Ed.2d 766 (1974). *See also United States v. Clavey*, 565 F.2d 111, 118–20 (7th Cir. 1977), *cert. denied*, 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978) (refusal to answer questions concerning instructions without advising counsel within trial court's discretion and therefore harmless). However, we reject this rationale as it essentially ignores the due process values which underlie the requirement that a defendant, with the assistance of counsel, be allowed input into the information and instructions given the jury during its deliberations by the trial judge. *See also Koehler v. State*, 519 P.2d 442, 448 n.18 (Alaska 1974) (trial judge's decision to discharge jury in absence of defendant and counsel was prejudicial, notwithstanding judge's testimony "that he would have discharged the jury . . . regardless of any suggestions . . . [the defendant might have made]").

18. A claim of pre-accusation delay must sound in terms of deprivation of due process of law under the 14th amendment to the United States Constitution and Alaska Constitution, art. I, § 7. The United States Constitution's sixth amendment does not afford speedy trial protection until the commencement of formal proceedings. *United States v. Marion*, 404 U.S. 307, 320–21, 92 S.Ct. 455, 463–464, 30 L.Ed.2d 468, 478–79 (1971). Similarly, the Alaska constitutional right to speedy trial, embodied in art. I, § 11, does not attach prior to formal accusation. *Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976).

19. *Marks v. State*, 496 P.2d 66, 68 (Alaska 1972). *See also United States v. Marion*, 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468, 480–81 (1971).

20. Under federal law also, the reasonableness of the delay and the resulting harm to the accused, if any, must be balanced. *See, e. g., Robinson v. United States*, 148 U.S.App.D.C. 58, 459 F.2d 847 (1972).

21. *Coffey v. State*, 585 P.2d 514, 519–20 (Alaska 1978); *Yarbor v. State*, 546 P.2d 564, 567 (Alaska 1976).

22. *Coffey v. State*, 585 P.2d 514, 520 n.19 (Alaska 1978).

that he contact the victim and arrange for an interview. Investigator Kaiser then made contact with the complaining witness and an interview took place on October 22, 1976. The tape-recorded statement taken from the complaining witness was subsequently transcribed, reviewed by her, and corrections made in early November. Investigator Kaiser then forwarded the statement along with physical evidence taken from the complaining witness to the state trooper detachment in Soldotna.

Investigator Kaiser also conducted an interview in the Juneau area of another witness, and handled additional follow-up investigation (i. e., polygraph administrated to the complaining witness in early January).

It was not until after receipt of the complaining witness' statement sometime in November that Trooper Kilpatrick began the Soldotna aspect of the investigation. After Trooper Kilpatrick received the statement from Investigator Kaiser, he contacted several witnesses and interviewed Dixon for the first time on December 7, 1976. Dixon was reinterviewed on December 17, 1976, in an attempt by Trooper Kilpatrick to clarify a discrepancy in Dixon's first statement as to the location of the sexual contact. Other witnesses were interviewed after December 17.

The entire investigative report, which consisted of 133–135 pages, was compiled and sent to the Kenai district attorney's office on approximately January 30, 1977, and was received by that office on February 2, 1977. As the next grand jury to sit in Kenai was scheduled for February 4, 1977, District Attorney Wardell determined that it would be impossible to subpoena and make travel arrangements for witnesses from Juneau in time to present the case to the grand jury by February 4, 1977.

Dixon does not dispute the state's explanation of the chronology of events which constituted the investigative phase of the case, but he does argue that the time taken to complete the investigation was excessive, given the relative lack of complexity of the instant case, and the fact that the prosecuting witness came forward only three days after the incident.[23]

The justifications for the state's delay in prosecuting Dixon must be balanced against the prejudice to the defense caused by the delay. Dixon asserts that he was prejudiced by the pre-accusation delay in two ways. First, he claims that certain material witnesses became unavailable, specifically, the person in whose house the complaining witness stayed the night of the alleged rape, and the person with whom she stayed the following night.[24] The latter persons apparently left the state before the case was brought against Dixon and were unavailable to testify. Presumably, had these persons been located they would have testified as to the victim's manner when she telephoned them shortly after the incident, her demeanor during her stay and any statements she might have made to them regarding the incident. The state points out that the record does not reflect that any attempt was made by the defense to subpoena the above persons and, in addition, that none of the persons with whom the complaining witness had contact on the day following the incident were interviewed or subpoenaed. Further, it has not been shown that the testimony which would have been produced would have materially aided Dixon's defense of consent.

---

**23.** This court has recognized that, especially in cases involving sexual assault, there may be delay not due to procedures in the prosecutor's office but rather to the understandable reluctance of the victim to initiate the prosecution. *See Yarbor v. State*, 546 P.2d 564, 566 (Alaska 1976). However, no such delay was occasioned by the prosecuting witness in the present case.

**24.** The prosecuting witness testified that after the rape occurred she drove from Soldotna to Homer, but got her directions to the house where she was supposed to stay that night confused and ended up sleeping on a couch at the wrong house. She did not learn of her mistake until the next morning when the owner awakened her. She was subsequently able to locate the correct house and stayed there the following night.

The second type of prejudice alleged by Dixon concerns the memory lapses of several of the witnesses who testified at trial. Dixon's brief indicates that one potential witness who was at the bar in Soldotna remembered hearing Dixon talk of some sexual contact on the night of the rape but did not remember the nature of the talk. Another witness, Kay Mitchell, who was also at the bar and talked with the complaining witness at some length, could not remember exactly how long the victim was in the bar or what her attire was (though she definitely did remember that the victim was casually and not provocatively dressed), or whether the victim bought her own drinks.

These allegations of prejudice do not appear to be sufficient to warrant overturning Dixon's conviction. Even granting that the state's investigation proceeded in an unduly dilatory manner, the prejudice alleged does not appear to be very substantial when compared to prior cases which have been reversed on this point by this court. In *Marks v. State*, 496 P.2d 66 (Alaska 1972), a reversal was mandated where the state made no attempt to justify a pre-accusation delay of eight months in a narcotics sale case, and the defendant testified that his possible witnesses either had no recollection of the events on the day of the alleged offense or had moved from the area and could not be contacted.[25] In contrast, in *Yarbor v. State*, 546 P.2d 564 (Alaska 1976), where the allegations of prejudice arising from a nine-month delay in the bringing of charges of lewd and lascivious conduct were that the memories of witnesses had faded as to some of the details by the time of trial, we observed that:

> We think it appropriate to note at the outset that to some degree there are faded recollections in every criminal action, since generally cases are not brought to trial until a few months after the allegedly illegal incident occurs.

*Id.* at 568. We then found that the defendant had not met his burden of establishing prejudice, in part because he failed to certify the relevant portions of the record on appeal and also because his allegations were too tenuous. Also of relevance is *Coffey v. State*, 585 P.2d 514, 520 (Alaska 1978), where this court held that the unavailability of two witnesses was not sufficiently prejudicial to warrant reversal of the defendant's conviction where one witness "did not disappear until after the pretrial evidentiary hearing, and the testimony was conflicting as to whether 'Bear' was present at the sale." Under the holdings of these cases, the prejudice alleged in this case does not measure up to that required in order to sustain a claim that pre-indictment delay impeded presentation of the accused's defense in the case at bar.

Reversed and Remanded for New Trial.[26]

BURKE, Justice, dissenting in part.

I respectfully disagree with the majority's conclusion that Judge Hanson's response to the jury's request for a playback constituted reversible error. Read in its entirety, I think Judge Hanson's note made it clear that he was not refusing a playback, but only asking the jury to refine its request so as to point out the specific portions of the record as to which there was possible disagreement. Thus, I conclude that the error was harmless beyond a reasonable doubt and would affirm appellant's conviction.

Otherwise, I concur in the views expressed by the majority.

---

25. It should also be noted that in *Marks v. State*, 496 P.2d 66 (Alaska 1972), we gave great weight to the state's concession that "appellant at trial made a 'prima facie showing of prejudice.'" *Id.* at 69. [footnote omitted]

26. Our resolution of the judge-jury communication issue has also made it unnecessary to resolve the ineffective assistance of counsel issue raised in this appeal.