**Donald BLAIR, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–7853.

Court of Appeals of Alaska.

March 8, 2002.

Joseph R. Faith, Dillingham, for Appellant.

John Skidmore, Assistant District Attorney, Dillingham, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Donald Blair was tried in the Dillingham district court for fourth-degree assault upon his wife. Soon after the jury retired to begin its deliberations, Blair's attorney told the trial judge that he wished to be present for any playbacks of testimony that the jury might request.

At 4:10 that afternoon, Blair's attorney telephoned the court to inform the judge that he would be away from his office for approximately forty-five minutes, picking up his wife and grandchildren. Seventeen minutes later, at 4:27 p.m., the jury requested a playback of a hotly disputed portion of the record—a tape recording in which Blair's wife either exclaimed "You have no right to strike me, Donald!" (the prosecution version) or "You have no right to grab me, Donald!" (the defense version).

The judge telephoned the defense attorney's office to let him know about the jury's request. As just explained, the defense attorney was out, so the judge left a message on the attorney's answering machine. Then, without waiting for Blair's attorney to return, the judge directed the in-court clerk to proceed with the playback.

Blair's attorney returned to his office at around 4:40 p.m. Soon after, he received word from the court that the jury had reached a verdict. The attorney went directly to the courthouse without checking his messages—and, thus, he did not learn of the playback until the next morning. When Blair's attorney discovered that a playback had occurred in his absence, he asked the judge to order a new trial. The trial judge denied this motion, and Blair now appeals.

Blair and his attorney had a right to be present during the playback of testimony. As the Alaska Supreme Court explained in *Dixon v. State*, 605 P.2d 882 (Alaska 1980):

A jury's request to review evidence during its deliberations obviously raises questions of great importance to a criminal defendant's rights, as [such a request] generally reflects doubt or disagreement on the part of at least some jurors as to the nature of evidence presented at trial. While the final decision as to the appropriate response to such a jury request is left to the trial court's discretion, we think it critically important that the defendant and his counsel be notified of the request. They should be allowed to consult with the trial court and to offer comments, suggestions, and objections to guide both the substance and phrasing of the court's response to the jury's request.

*Id.* at 887.

The State concedes that the trial court committed error in holding the playback without Blair and his attorney. The remaining question is whether this error requires reversal of Blair's conviction and a new trial. *Dixon* holds that, in these circumstances, it is the State's burden to show that the error was harmless beyond a reasonable doubt.[1]

█ The State has not met that burden. As already noted, the jury asked to rehear a portion of the evidence that was hotly contested. It is a fair inference that at least some jurors believed that Blair's wife had said "grab" rather than "strike"—and that these jurors thought that their decision might turn on resolution of this factual issue.

As Blair points out, when the court conducted the playback, the jurors did not hear the original tape recording of Blair's wife's exclamation. Rather, they heard a playback of the in-court clerk's tape recording of the portion of the trial in which the original tape was played. In other words, the jury reached its decision after listening to a tape of a tape. Had Blair's attorney been notified of the jury's request, he might well have convinced the trial judge to let the jury hear the original tape.

Of course, we do not know whether the trial judge would have granted such a request. But the point is that Blair was entitled to make the request and to argue in support of it. He was denied this right, and the evidence at issue appears to have been critical to the jury's decision. We therefore conclude that there is a reasonable possibility that the verdict was affected by the trial court's error in holding the playback without Blair and his attorney. Blair is entitled to a new trial.

Even though we have decided that Blair must receive a new trial, we must now address two other issues raised in this appeal because they will probably arise during any retrial.

The first issue is whether the trial judge abused his discretion when he ruled that Blair's wife's exclamation was admissible as an excited utterance under Alaska Evidence Rule 803(2). Blair's wife made this statement as she was watching the police take her husband into custody. In the district court, Blair pointed out that he was taken into custody ten to fifteen minutes after the alleged assault, thus giving his wife ample time to think about her words. Blair argued that, under these facts, his wife was no longer under the stress of excitement caused by the alleged assault when she made her statement.

The trial judge took a different view of the matter. The judge concluded that, despite the passage of ten or fifteen minutes, Blair's wife was still under the stress of excitement engendered by the incident and that she blurted out the statement without conscious reflection as she watched her husband being escorted to the patrol car.

█ The ultimate question is whether Blair's wife's statement "[was] the product of her conscious reflection about what she should say."[2] The theory behind Evidence Rule 803(2) is "that circumstances may produce a condition of excitement which temporarily stills the [speaker's] capacity of reflection and produces utterances free of conscious fabrication."[3] This is a question

---

1. *See id.* at 888.

2. *Ryan v. State,* 899 P.2d 1371, 1378 n. 4 (Alaska App.1995).

3. *Id.,* citing the Commentary to Alaska Evidence Rule 803(1)-(2), third paragraph.

of fact, and a trial judge's conclusion on this issue is to be upheld on appeal unless it is clearly erroneous.[4] Based on the circumstances of this case, we conclude that the trial judge was not clearly wrong when he concluded that Blair's wife's statement was an excited utterance.

The second issue is whether the trial judge abused his discretion when he refused to dismiss the prosecution against Blair or, alternatively, order the State to grant immunity to Blair's wife after she claimed her privilege against self-incrimination and refused to testify at Blair's trial.

With a very few exceptions, virtually every American jurisdiction that has considered this issue has concluded that a court has no authority to immunize a witness or to order the government to immunize a witness.[5] Blair has not convinced us to depart from that rule.

■ However, even though a court may have no power to order the government to grant immunity to a witness, this court held in *State v. Echols*, 793 P.2d 1066 (Alaska App.1990), that a court has the authority, in certain extreme circumstances, to dismiss a criminal case unless the government grants immunity to a defense witness. Blair suggests that his case required this type of remedy—that the trial judge should have dismissed the case when the State refused to grant immunity to his wife.

But this court's decision in *Echols* applies only to a narrow set of circumstances: instances where the State's refusal to grant immunity to a defense witness undermines the fundamental fairness of the trial.[6] As the two concurring judges in *Echols* noted, the court's ultimate power to dismiss a criminal prosecution must be exercised sparingly so as to preserve the basic rule that decisions involving witness immunity "lie within the exclusive province of the executive branch".[7]

■ Blair's trial judge concluded that the State did not work manifest injustice by declining to extend immunity to Blair's wife. Having reviewed the record, we conclude that the trial judge did not abuse his discretion. The State's refusal to grant immunity to Blair's wife did not undermine the fairness of Blair's trial.

It was not manifest that Blair's wife's testimony would have led to his acquittal. Blair's case presented an instance where the purported victim of domestic violence indicated her desire to retract her earlier accusation. Assuming that Blair's wife would have recanted her prior accusation against her husband, she would certainly have been impeached with her prior claims that she had been assaulted.

Moreover, as the State points out, the government has a strong interest in not granting immunity to spouses and live-in companions who later claim that their initial accusations of domestic violence were false. Freely

4. See *Dezarn v. State*, 832 P.2d 589, 591 (Alaska App.1992) ("A trial judge's ruling that a particular out-of-court statement qualifies as an excited utterance depends on the specific facts of the case and is, in effect, a finding of fact regarding the declarant's state of mind at the time of the utterance. For this reason, the trial court's ruling will not be reversed on appeal unless it is shown to be clearly erroneous.")

5. See *State v. Echols*, 793 P.2d 1066, 1071 n. 2 (Alaska App.1990) (noting that the concept of inherent judicial authority to grant immunity "has not been widely accepted"). *See also United States v. Angiulo*, 897 F.2d 1169, 1191 (1st Cir.1990) (noting that virtually every court that has considered the issue has determined that courts have no inherent authority to grant immunity) (citing cases); *United States v. Capozzi*, 883 F.2d 608, 614 (8th Cir.1989) (observing that nearly every federal court of appeals that has considered the question of court-granted immu-

nity has rejected it as a violation of the separation of powers doctrine) (citing cases); *United States v. Tindle*, 808 F.2d 319, 325 n. 4 (4th Cir.1986) (noting that the concept of inherent judicial authority to grant immunity has been soundly criticized and is the minority view) (citing cases); *Carter v. United States*, 684 A.2d 331, 338–39 (D.C.App.1996) (joining the "overwhelming number of courts" that have rejected the concept of judicially imposed immunity) (citing cases); Robert M. Schoenhaus, Annotation, *Right of Defendant in Criminal Proceeding to Have Immunity From Prosecution Granted to Defense Witness*, 4 A.L.R.4th 617, § 3, at 622–24 (1981) (supplemented by 2001 pocket part § 3, at 106–07) (citing cases).

6. See *id.*, 793 P.2d at 1074–75.

7. See *id.*, 793 P.2d at 1075 (Bryner, C.J., and Singleton, J., concurring).

granting immunity to recanting victims in domestic violence cases would likely engender collusion and witness-tampering.

For these reasons, we find Blair's case significantly different from the facts of *Echols,* and we hold that the trial judge did not abuse his discretion when he declined to dismiss the case when the State did not grant immunity to Blair's wife.

Because Blair and his attorney were denied the right to attend the jury's playback of testimony, the judgement of the district court is REVERSED. Blair is entitled to a new trial.

At the same time, we uphold the trial judge's rulings (1) that Blair's wife's statement was admissible under Evidence Rule 803(2) as an excited utterance and (2) that the court could not order the State to grant immunity to Blair's wife, and (3) that the State's decision not to grant immunity to Blair's wife did not necessitate the dismissal of the case.