Frederick **RICHARDSON**, Appellant,

v.

**STATE of Alaska**, Appellee.

No. 3262.

Supreme Court of Alaska.

June 16, 1978.

Mark E. Ashburn, Asst. Public Defender, Fairbanks and Brian Shortell, Public Defender, Anchorage, for appellant.

Rhonda F. Butterfield, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

## OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR and BURKE, JJ. and DIMOND, J. Pro Tem.

DIMOND, Justice Pro Tem.

A jury found Frederick Richardson guilty of possession of the narcotic drug heroin. He appeals on a number of different grounds.

The case was tried in the Fourth Judicial District in Fairbanks by Judge Ripley, whose official station was in the Third Judicial District in Anchorage. After the case had gone to the jury, Judge Ripley departed for Anchorage. Apparently Judge Van Hoomissen, the presiding judge of the Fourth Judicial District in Fairbanks, was to receive the verdict.

After debating for an unknown length of time, the jury foreman gave a note to the bailiff, stating that the jury would like to rehear the recorded testimony of three witnesses. The bailiff telephoned Judge Van Hoomissen sometime after the dinner hour, and he told the bailiff to go ahead and let the jury hear the testimony. An in-court deputy called the judge later and said she had played the tapes for the jury and was going home.

The judge was not present when the replay of the tapes was made. Although the bailiff had the telephone numbers of counsel for the state and the defense, no attempt was made to notify them. Neither they nor the defendant were present at the replay of the testimony. It is not entirely clear from the record what particular testimony was played back to the jury, although defense counsel stated that he thought it was the testimony of the state's witnesses Aldridge, Brown, and Thomas. But there is no certainty as to this, and there is nothing to indicate if all or only a portion of a particular witness' testimony was played back to the jury. No recording of the replay proceedings was made in court, so there is no way of ascertaining whether the in-court deputy or the bailiff, or anyone else who might have been present, in anyway communicated with the jury, or whether the jury communicated among themselves or with anyone else at this time. In short, about all we know from the record is that the jury was permitted to hear a replay of a portion of some testimony given at the trial and that neither the judge, the state's attorney, the defense counsel, nor the defendant was present at the time.

■ In the absence of an express waiver by a defendant in a criminal case, we have held that it is constitutional error for a judge to permit the playback of testimony in the defendant's absence. *State v. Hannagan*, 559 P.2d 1059, 1065 (Alaska 1977). Where such constitutional error exists, as it does here, the judgment of conviction must be reversed unless the court is able to declare that the error is harmless beyond a reasonable doubt. *Hannagan, supra.* The

state must establish beyond a reasonable doubt that such an error "did not contribute to the verdict obtained." *Braham v. State,* 571 P.2d 631, 645 (Alaska 1977).

Except for what we have stated, the record is silent on what transpired when the playback took place. It is not inconceivable that portions of the testimony selected by the jury for rehearing would have placed undue emphasis on the state's case against Richardson, whereas other testimony, not played back, would have had the effect of modifying the impact of what the jury reheard. At least, had the judge, counsel, and defendant been present, Richardson's attorney might have made objections or suggestions that could have affected the judge's discretion in determining what portions of the recorded testimony the jurors should have been permitted to have played back to them.

But we need not conjure up possibilities of prejudice to Richardson in these circumstances. Preservation of his fundamental constitutional right to be present when the playback took place "should not depend on the imaginative abilities of appellate judges." *R. L. R. v. State,* 487 P.2d 27, 43 (Alaska 1971). It was constitutional error to allow the playback of testimony to the jury in Richardson's absence, and the state has not demonstrated that the error was harmless beyond a reasonable doubt. This is enough to require reversal and a new trial.

Since there must be a new trial, it is not necessary that we pass upon other points of alleged error raised by Richardson in his brief on appeal. But some of those issues may arise again at a new trial, and thus we believe it appropriate to dispose of them here.

The heroin that Richardson was charged with possessing was a brownish colored, powdery substance contained in five small plastic bags, which were enclosed in the larger plastic bag. The heroin had been identified as such by a chemist, had been introduced in evidence as an exhibit at the trial of James Aldridge, and had been placed on the desk of the deputy clerk in the courtroom. Attached to the larger plastic bag was a red evidence tag of the Alaska State Troopers and a white tag used by the court clerk to identify the bag and contents as an exhibit.

On February 11, 1976, Richardson was a spectator, along with several other persons, at Aldridge's trial. Another spectator, Wilbert Brown, testified that during a court recess, when the judge, counsel, and the deputy clerk were out of the courtroom, Richardson walked up to the clerk's desk and took the heroin. Brown stated that he stopped Richardson at the door to the courtroom and asked him what he was doing. In response, Richardson showed Brown a plastic bag in which were enclosed small packets containing a brownish substance. Brown remonstrated with Richardson, but Richardson continued out of the courtroom. Later in the day, the deputy clerk discovered that the bag of heroin was missing.

This event allegedly occurred between 3:30 and 4:40 p. m. Robert Thomas testified that on the same day and between those same hours, Richardson and a man named Gordon Pascu showed up at Thomas' house. Also present was a woman named Patricia Hawley. Thomas said he saw Richardson in possession of the plastic bag with a brown substance within and a red card attached to the bag and asked Richardson where he got the heroin. Richardson replied that it came from the courthouse. There was testimony that the heroin was used or "shot up" by Thomas, Richardson, and Hawley.

A few moments later someone came to the front door of Thomas' house. Thomas testified at the trial that while he was in the front room to answer the door, Pascu, Richardson, and Hawley were in the kitchen. Thomas said that he heard a male voice from the kitchen directing someone to flush the bags and the tags down the toilet. His testimony was as follows:

Q [Mr. Ray] Mr. Thomas, I was asking you about the voices that you heard— the words that you heard. Would— relate to us, and specifically the ladies

and gentlemen of the jury, what it was that you heard from the kitchen?

A  Someone said to flush the bags and tags down the toilet  .   .   .

Q  And  .   .   ..............

A   .   .   .  get rid of them.

Q   .   .   .  did you hear any toilet being flushed after that?

A  Yes.

Richardson objected to the introduction of this testimony as hearsay, but his objection was overruled.  On this appeal, Richardson claims that the admission of the evidence was erroneous and calls for a new trial.

In *Watson v. State,* 387 P.2d 289, 293 (Alaska 1963), we held:

Evidence of a statement made other than by a witness who is testifying is excluded as hearsay only when it is offered to establish the truth of the fact stated. Where it is offered without reference to its truth, but for some other relevant purpose, then the hearsay rule does not apply.  (footnote omitted)

The statement that was made here, other than by the witness Thomas, was this: "[F]lush the bags down the toilet—get rid of them."  This utterance is, of course, an out-of-court statement made by someone other than Thomas, the witness testifying. The question is whether its value depends on the truth of the statement or the credibility of the person who made it.

■  The statement made was a directive from one person to another to perform an act.  As such, the statement, taken literally, is not susceptible of being characterized as being a true statement or a false one and thus could not, as such, be offered to "establish the truth of the *facts* stated." (emphasis added) *Watson v. State, supra.*  But there is a clear inference from the statement and that is that the bags and tags referred to were likely to be the same ones

Richardson had taken from the clerk's desk in the courtroom.  This inference, being one of fact, is capable of being considered a true or false statement and was undoubtedly offered by the prosecution to establish its truth.  Thus, its value depended upon its truth and in turn, upon the credibility of the person (not identified) who made it. The statement made was hearsay.

■  Generally speaking, the rule is that hearsay is not admissible in evidence.  But there are numerous exceptions to that rule. One that is pertinent here is what is termed as the "Present Sense Impression," i. e., "A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter."  See Federal Rules of Evidence, 803(1), which is identical to Alaska's proposed Rule of Evidence, 803(a). The statement we are concerned with falls within that exception.  The directive to dispose of the bags and tags was given by someone in the kitchen immediately after he or she had perceived the event, i. e., had heard the knock on the door.[1]  As stated by the Advisory Committee to the Federal Rules of Evidence, the underlying theory of this exception to the rule excluding hearsay "is that substantial contemporaneity of event and statement negative the likelihood of deliberate or conscious misrepresentation."  This exception to the hearsay rule fits the situation we are dealing with in this case, and therefore, the statement was properly admitted into evidence.[2]

The prosecuting attorney was Mr. Ray. After it was discovered that the heroin was missing, Ray made a statement to the police regarding the persons he had seen in or about the courtroom on the day the heroin was taken.  One week prior to the beginning of Richardson's trial, Richardson subpoenaed Ray as a witness.  The court granted the state a protective order under

---

1.  "Perceive" means to become aware of directly through any of the senses; especially to see or hear.  *The American Heritage Dictionary* at 972 (1973).        .

2.  This disposes of Richardson's claim that the indictment should have been dismissed since his contention in this regard is based on substantially the same testimony given by Thomas before the grand jury, which Richardson claims was inadmissible hearsay.

which Ray would not have to testify since he was prosecuting the case, and the only other person available to prosecute was at Barrow, Alaska. In lieu of his testimony, there was read to the jury a statement, taken from the police report, as to whom Ray had seen in or about the courtroom, but this statement did not mention Ray by name. This has been referred to as a "stipulation" between the state and defense counsel, although it is not clear from the record that Richardson's counsel had really agreed to its content. Richardson claims on this appeal that it was an abuse of discretion on the part of the trial judge to not require Ray to appear as a witness under the subpoena Richardson had served upon him.

We need not enter into a discussion as to the propriety of the court's ruling. Since there must be a new trial, there will be sufficient time for Richardson to subpoena Mr. Ray as a witness, with some other person from the District Attorney's Office designated to prosecute the action.

Gordon Pascu, who had been a spectator in the courtroom during the Aldridge trial and had also been at Thomas' house when Richardson was there with the heroin, testified before the grand jury when the charge against Richardson was being considered. Pascu denied that he had seen Richardson take the heroin and denied that he had been at the Thomas house that night. Pascu was subsequently indicted for perjury. At the time of Richardson's trial, it was clear that Pascu would invoke his constitutional privilege against self-incrimination in any area covered by his grand jury testimony, and for that reason the court ruled at Richardson's trial that Pascu would be unavailable as a witness.[3] Richardson's request that Pascu's grand jury testimony be read to the jury was denied. Richardson claims reversible error on the ground that he was denied his constitutional rights to be confronted with the witnesses against him and to have

compulsory process for obtaining witnesses in his favor.[4]

We need not decide this point. The perjury indictment against Pascu was dismissed a couple of months following Richardson's trial. We do not know whether Pascu would still wish to invoke the privilege against self-incrimination at Richardson's new trial. If he does, we believe it should be left for the determination of the trial court whether the privilege would still exist.

At the close of Richardson's trial, he requested the court to give the following instruction regarding Gordon Pascu:

> This court has ruled that one witness, Gordy Pascu, is unavailable to testify in this trial. Mr. Pascu is unavailable because he would take the Fifth Amendment as to any questions about the events at issue in this case. Mr. Pascu would take the Fifth Amendment, on the advice of his attorney, because he has been indicted on two counts of perjury. Those charges are based on Mr. Pascu's testimony to the Grand Jury in the case of *State v. Richardson*, the cause presently at trial before you.

The trial court refused to give the instruction, and Richardson claims this was error.

We need not decide this point because at a new trial of Richardson the instruction would be inappropriate in light of the dismissal of the perjury indictment against Pascu.

Richardson requested from the court a protective order which would have prohibited the prosecuting attorney from impeaching Richardson by presenting evidence that he had been convicted of petty larceny (shoplifting) in 1974. The request was denied, and Richardson contends that this ruling was error. He argues that impeachment of a defendant by a prior conviction violates due process, and that petty larceny

---

3. Out of the presence of the jury, Pascu stated in open court that he would invoke his privilege against self-incrimination if asked any questions regarding the events on February 11, 1976.

4. U.S.Const. Amend. VI; Alaska Const. art. I, § 11.

is not a crime involving dishonesty or false statement, within the meaning of Criminal Rule 26(f)(1).[5]

The same arguments were made and decided adversely to Richardson's contentions in our recent decision in *Lowell v. State,* 574 P.2d 1281 (Alaska 1978). In that decision we held that impeachment of a defendant by a prior conviction does not deny the defendant due process of law, and that larceny is a crime involving dishonesty or false statement.

Richardson argues further that this decision has a chilling effect on the determination he had to make of whether or not to take the stand and testify in his own behalf, and that it resulted here in his not taking the stand. That was Richardson's choice. He was not required to testify on his own behalf. But if he had decided to do so, there is no reason that we can conceive why he should not be treated as any other witness, with full opportunity given to the state to cross-examine him and to impeach him with former crimes involving dishonesty or false statement under Criminal Rule 26.[6] There was no error here.

The judgment is REVERSED and the case is REMANDED for a new trial.

---

**5.** Crim.R. 26(f)(1) provides:

For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime is admissible but only if the crime involved dishonesty or false statement.

**6.** *See Lowell v. State,* 574 P.2d 1281 (Alaska 1978).