**Bernard H. WAMSER, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5370.**

Supreme Court of Alaska.

Oct. 8, 1982.

---

Charles G. Evans, Smith & Gruening, Inc., Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BURKE, C.J., and RABINOWITZ, CONNOR, MATTHEWS and COMPTON, JJ.

1. *See Wamser v. State,* 600 P.2d 1359 (Alaska 1979).

2. In his application for post-conviction relief, Wamser states that he was informed by his counsel at some time after the jury retired for deliberations that the jury was deadlocked. It is unclear whether this information was conveyed during deliberations or after the verdict. Wamser's recollection does not affect our disposition of the case because there is no evidence that either Wamser or his counsel received notice of the jury foreman's note. Further, both sides agree that the trial judge never received the jury foreman's note.

## OPINION

COMPTON, Justice.

This case raises the issue of whether a bailiff's failure to notify a trial court of a jury foreman's communication indicating that the jury was deadlocked constitutes reversible constitutional error. The superior court denied petitioner's motion for post-conviction relief. The Alaska Court of Appeals affirmed. We reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are undisputed. In 1977, Bernard H. Wamser (Wamser) was convicted in district court of unlawfully fishing for king crab in closed waters. We affirmed his conviction [1].

Subsequently, Wamser retained new counsel who reviewed the original file in the case and discovered a note signed by the jury foreman which read:

> Bailiff,
>
> We seem to be completely unable to come to a unanimous decision
>
> /s/ Robert G. Blair
> Foreman

This note was filed in the district court at Kodiak and stamped by the deputy clerk on March 23, 1977. The precise time of day when the note was filed is uncertain.

Upon determining that neither Wamser nor his prior counsel had ever been advised of the existence of this note,[2] counsel promptly filed a motion for post-conviction relief pursuant to Criminal Rule 35(c).[3]

3. Alaska R.Crim.P. 35(c) provides in pertinent part:

> Any person who has been convicted of, or sentenced for, a crime and who claims:
> (1) that the conviction or the sentence was in violation of the constitution of the United States or the constitution or laws of Alaska;
> . . . .
> (4) that there exists evidence of material facts, not previously presented and heard, that requires vacation of the conviction or sentence in the interest of justice;
> . . . .
> may institute a proceeding under this rule to secure relief.

Wamser alleged violations of his federal and state constitutional rights to due process of law and to be present at every stage of the trial.

Neither the deputy clerk[4] who stamped receipt of the note nor the jury foreman who authored it have any independent recollection of the note or the circumstances surrounding it. Nevertheless, the authenticity of the note is undisputed, as well as the fact that it was never seen by the trial judge, the prosecuting attorney, Wamser, or Wamser's counsel.

The trial started on March 22, 1977. After each side completed its presentation on the following day, the trial judge instructed the jury that:

> During your deliberations you'll be in the custody of a bailiff. You are not permitted contact with any other person. Any requests for your needs must be addressed to the bailiff.

If a verdict was not reached by 4:30 p.m., the jury was instructed to use a sealed verdict form.[5] The trial judge orally paraphrased the written instructions found on the sealed verdict form, but neither set of instructions addressed the issue of what the jury should do if it was unable to reach a unanimous decision.

The case went to the jury shortly before noon on March 23, 1977; deliberations commenced at approximately 1:00 p.m. The court reconvened at 2:25 p.m. that same afternoon to consider a note submitted by the jury to the bailiff regarding a piece of

evidence. That note was responded to on the record and in the presence of the defendant and his counsel. No further proceedings, other than the swearing in of another bailiff, were held on the record until the jury verdict was returned in open court on the following morning, March 24, 1977.

It is unclear exactly how long the jury deliberations lasted. The verdict was dated March 23, 1977, however, and because the sealed verdict form was utilized we do know that a verdict was not returned until after 4:30 p.m. There is also evidence that the jury deliberations may have continued into the evening hours.[6]

Wamser's motion for post-conviction relief was denied by the superior court which found and concluded that:

> 1. The Applicant, Bernard H. Wamser, has failed to show, by a preponderance of the evidence, that error was committed by ex parte communication alleged to have been made between the jury which convicted him and any bailiff, clerk, judge or other officer of the court, and further,
>
> 2. If such error by ex parte communication as alleged had been shown to have been made, by a preponderance of the evidence, I hereby conclude that under all premises such alleged error would have been harmless beyond a reasonable doubt.

The Alaska Court of Appeals affirmed for the same reasons given by the superior

---

4. The deputy clerk served as bailiff for the initial period after the case went to the jury. Thereafter, a new bailiff was sworn in and served until the jury finished deliberating.

5. The sealed verdict form read:
 Ladies and Gentlemen of the Jury:
 If you have not reached a verdict by 4:30 o'clock P.M., today, then when you have agreed upon a verdict, have the foreman sign the same, seal it up in this envelope, in your presence and keep it in his possession, unopened. You may then separate and go to your homes.
 No juror must say anything about the verdict agreed upon, nor to suffer yourself to be addressed by anyone concerning this trial.

All the jurors must be in the jury box in court at 9:00 A.M., of March 24, 1977, at which time the verdict will be handed to the Court and opened in the presence of the jury.
 Dated at Kodiak, Alaska, this ___ day of March, 1977.

6. The prosecuting attorney's affidavit states in part:
 The remainder of the working day was spent in my office, but I do recall leaving a social function at the Elks Club across the street from the court building sometime in the evening and observing lights on in the jury room; the presence of someone there, and assuming that the jury was still deliberating; ...

court.[7] We granted Wamser's Petition For Hearing to consider two issues.

## II. CONSTITUTIONAL ERROR

■ In a proceeding for post-conviction relief, the petitioner has the burden of establishing by a preponderance of the evidence those facts which will entitle him to relief.[8] In denying Wamser's motion for post-conviction relief the superior court found that an ex parte communication was only "alleged" to have been made between the jury and the bailiff. The trial court's factual findings will only be set aside on review if they are clearly erroneous.[9] In the present case, however, neither party disputes that the jury foreman passed the deadlock note to the bailiff and that this communication did not come to the attention of the trial judge, Wamser, or his counsel. Moreover, the court records reflect that this communication was filed with the court on the day of the deliberations. In view of these facts, we believe the superior court's finding is clearly erroneous.

The superior court also concluded that no error was committed by the jury's "alleged" ex parte communication. Wamser argues, however, that the bailiff's failure to notify the court of the jury's deadlock note precluded any opportunity to conduct proceedings on the record in his presence therefore violating his constitutional rights to due process of law and to be present at every stage of the trial. We agree and find that the superior court erred in its conclusion.

■ The right of the defendant to be present at every stage of the trial has been recognized under both the United States and the Alaska Constitutions.[10] "Included within the scope of this right is the period of jury deliberations; thus, the defendant has the right to be present whenever any communication between the court and the jury occurs during those deliberations."[11] Dixon v. State[12] and the line of cases preceding it[13] hold that a trial judge's response to a jury communication without notice to the defendant and his counsel and a hearing on the record is error. We described the critical nature of the defendant's right to be notified of jury communications in Dixon:

> While the final decision as to the appropriate response to such a jury request is left to the trial court's discretion, we think it critically important that the defendant and his counsel be notified of the request. They should be allowed to consult with the trial court and to offer comments, suggestions, and objections to guide both the substance and phrasing of

---

7. Summary Disposition No. 32 (Alaska App., Sept. 10, 1981).

8. *Dolchok v. State,* 639 P.2d 277, 282 (Alaska 1982); *Hensel v. State,* 604 P.2d 222, 231 (Alaska 1979); *Merrill v. State,* 457 P.2d 231, 234 (Alaska 1969).

9. *Dolchok v. State,* 639 P.2d 277, 283 (Alaska 1982); *Merrill v. State,* 457 P.2d 231, 233–34 (Alaska 1969).

10. The United States Supreme Court has treated the accused's right to be present at every stage of the trial as related to either the confrontation clause of the sixth amendment or to the due process clause of the fourteenth amendment. *See Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 1058, 25 L.Ed.2d 353, 356 (1970). Similarly, in Alaska the right to be present is founded on the state constitutional rights of the accused to due process and to confront the witnesses against him. Alaska Constitution art. I, §§ 1 and 7. *See Dixon v. State,* 605 P.2d 882, 884 (Alaska 1980); *State v.*

*Hannagan,* 559 P.2d 1059, 1063 (Alaska 1977). The constitutional right to be present has been implemented as a procedural requirement by Alaska R.Crim.P. 38(a).

Without addressing the scope of the corresponding federal constitutional rights, our analysis and holding in the present case are founded upon the rights conferred by the Alaska Constitution.

11. *Dixon v. State,* 605 P.2d 882, 884 (Alaska 1980).

12. *Id.*

13. *See Richardson v. State,* 579 P.2d 1372, 1374 (Alaska 1978); *Cox v. State,* 575 P.2d 297, 299 (Alaska 1978); *State v. Hannagan,* 559 P.2d 1059, 1064 (Alaska 1977); *Koehler v. State,* 519 P.2d 442, 446 (Alaska 1974); *Gafford v. State,* 440 P.2d 405, 417 (Alaska 1968); *Noffke v. State,* 422 P.2d 102, 105 (Alaska 1967).

the court's response to the jury's request.[14]

Wamser argues that the present case is controlled by the *Dixon* line of cases.

The State contends that the *Dixon* line of cases can be distinguished from the present case because they involved situations in which the trial judge actually received communications from the jury, whereas in the present case the trial judge never received the jury note. This distinction, together with the fact that in the instant case the jury initiated the communication to the trial court, rather than the converse, provided the basis for the superior court's finding that Wamser had not established constitutional error by a preponderance of the evidence.[15]

■ We agree with Wamser and conclude that the present case falls squarely within the boundaries of *Dixon* and its predecessors. It is irrelevant that the communication at issue came from the jury rather than from the judge. Constitutional considerations arise whenever a trial judge is not informed of substantive inquiries from a deliberating jury. Where a jury submits a note to the proper authority[16] stating that it is deadlocked in its deliberations, the failure to respond may have a coercive effect.[17] In *Des Jardins v. State,*[18]

we held that a trial judge should provide guidance when a jury is confused about a legal issue that earlier instructions have not sufficiently resolved. The jury instructions in the present case provided no guidance for the jury in the event that it was unable to reach a unanimous verdict. While we need not address what response, if any, would have been appropriate, Wamser and his counsel had a right to be present to offer recommendations to the trial judge.[19] We hold, therefore, that the bailiff's failure to deliver the jury deadlock note to the trial judge precluded an opportunity to conduct proceedings on the record in Wamser's presence, and thus violated Wamser's rights guaranteed by the Alaska Constitution to due process of law and to be present at every stage of the trial.

We are not persuaded by the State's argument that Wamser has not proved error by a preponderance of the evidence because "he has not shown that the note was not orally recalled or that the jury did not inform the bailiff it had reached a verdict while the bailiff was in the process of attempting to inform the court of the note." The State's idle speculation is not supported by the record and fails to rebut the evidence of constitutional error presented by Wamser.[20] Moreover, Wamser's burden on

**14.** 605 P.2d at 887.

**15.** In the oral decision denying Wamser's motion for post-conviction relief, the superior court judge commented to Wamser's counsel: Mr. Evans, you may have something on appeal; you don't have anything before this Court, because it doesn't rise to the level of Cox as far as I'm concerned. It's not an ex parte communication between the Court and the jury. If it had been I might consider it much differently.

**16.** The Wamser jury properly followed the trial judge's instructions by delivering the deadlock note to the bailiff. The bailiff acts as the court's agent during jury deliberations and is the proper person to whom a deliberating jury should communicate. *See* Alaska R.Crim.P. 27(e); *cf. Parker v. Gladden,* 385 U.S. 363, 365, 87 S.Ct. 468, 470, 17 L.Ed.2d 420, 423 (1966) ("the official character of the bailiff—as an officer of the court as well as the State—beyond question carries great weight with a jury"); *United States ex rel. Tobe v. Bensinger,* 492 F.2d 232, 238 (7th Cir. 1974) (irrelevant

that answers came from bailiff rather than a judge).

**17.** Neither party questions the coercive effect of a nonresponse to the jury's deadlock note. The possibility of a coerced verdict suggests reversible error. Since the case is decided on other grounds, however, this issue need not be addressed. *Cf. Dixon v. State,* 605 P.2d 882, 888–89 (Alaska 1980) (reversible error found without deciding whether the trial court's response to jury request for evidence was itself an abuse of discretion).

**18.** 551 P.2d 181, 190 (Alaska 1976).

**19.** *See Koehler v. State,* 519 P.2d 442 (Alaska 1974).

**20.** On their face, the scenarios posed by the State seem improbable. The record demonstrates that the deadlock note was stamped by the deputy clerk, meaning it was received before 4:30 p.m. during regular court hours. If

this issue does not require him to prove a myriad of hypothetical negatives. We hold that Wamser has demonstrated by a preponderance of the evidence that the trial court committed constitutional error.

## III. HARMLESS ERROR

 Although Wamser has demonstrated that constitutional error was committed at his trial, reversal is warranted only if the error was prejudicial. Thus we must determine whether the error was prejudicial or harmless. The proper standard of review is whether the error was "harmless beyond a reasonable doubt." [21] The burden of proof on this issue lies with the State.[22]

 Wamser contends that if the trial court had learned of the jury deadlock, it could have responded in several different ways. The court would have had the option of making additional inquiries of the jury, polling the individual jurors, permitting further deliberations after issuing additional instructions, or declaring a mistrial and dismissing the jury.[23] Because of these various alternatives, Wamser argues that any response, including no response, given by the trial judge without first notifying the defendant and his counsel cannot be harm-

less error. Wamser also claims that he cannot show specific prejudice in the absence of a contemporary record of the proceedings.

In our view the absence of a contemporaneous recorded proceeding is dispositive of this issue. Without such a record, it is impossible for the State to prove that the error was harmless beyond a reasonable doubt.[24] We have previously held that where the record is silent regarding communications between the judge and the jury, making it impossible to ascertain what transpired, a violation of the defendant's right to be present could not be considered harmless error beyond a reasonable doubt.[25] We hold that the error was prejudicial to Wamser and that reversal is warranted.

The decision of the Court of Appeals affirming the superior court's denial of Wamser's motion for post-conviction relief is reversed. This case is remanded for a new trial.

REVERSED and REMANDED.

BURKE, Chief Justice, with whom MATTHEWS, Justice, joins, dissenting.

I respectfully dissent.

---

the jury withdrew its question or reached a verdict before the bailiff delivered the note to the trial judge, it is more likely than not that the verdict would have been returned during regular working hours on March 23. But the use of the sealed verdict form shows that the jury did not return the verdict until after 4:30 p.m. Indeed, the prosecuting attorney's affidavit indicates that the jury deliberations continued into the evening.

An alternative scenario can be pieced together from these same facts. The jury communicated its deadlocked status to the bailiff during the afternoon of March 23. For some unknown reason, the bailiff failed to relay this message to the trial judge. Thereafter, the jury remained into the evening awaiting guidance from the court. When it became clear that guidance was not forthcoming, the jury issued a guilty verdict and went home.

Given the lack of contemporaneous proceedings on the record, both scenarios are speculative. Fortunately, we need not reconstruct the events in order to resolve this appeal.

**21.** *Dixon v. State,* 605 P.2d 882, 884 (Alaska 1980); *State v. Hannagan,* 559 P.2d 1059, 1065 (Alaska 1977); *Chapman v. California,* 386 U.S.

18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705, 710–11 (1967).

**22.** *Richardson v. State,* 579 P.2d 1372, 1374 (Alaska 1978).

**23.** *See Koehler v. State,* 519 P.2d 442, 447–48 (Alaska 1974); 3 ABA Standards for Criminal Justice, Standards Relating to Trial by Jury §§ 15–4.3, 4.4 (2d ed. 1980).

**24.** The State contends that since the jury may have withdrawn their question or reached a verdict before the bailiff could inform the trial judge of the note, any error which was committed would be harmless. The validity of this proposition hinges on whether the posed hypothetical circumstances actually occurred. In the absence of a contemporaneous record concerning the deadlock note, it is impossible to establish what actually occurred. As a consequence, the State cannot demonstrate that error was harmless beyond a reasonable doubt.

**25.** *See, e.g., Richardson v. State,* 579 P.2d 1372 (Alaska 1978); *Cox v. State,* 575 P.2d 297 (Alaska 1978).

There is a complete lack of evidence of the circumstances surrounding the preparation of the jury foreman's note and its delivery to the bailiff. The evidence of Wamser's guilt was overwhelming and I see no reason to presume error.