**Patricia D. Paula NEWMAN, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 5449.**

Court of Appeals of Alaska.

Nov. 26, 1982.

---

Christine Schleuss, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

SINGLETON, Judge.

Paula Newman was convicted of perjury, former AS 11.30.010, and offering false evidence at trial, former AS 11.30.290. She appeals on the following grounds: (1) the trial court erroneously refused to dismiss the indictment against her; (2) the trial court improperly refused to permit her attorney to withdraw and to appoint the public defender; (3) the trial court erroneously denied her motion for a new trial based on the cumulative impact on the jury of evidence of threats; and (4) the trial court erred in failing to notify her of a communication from the jury until after the jury was dismissed.

The trial court properly denied Newman's motion to dismiss the indictment. However, the trial court's failure to notify Newman of a communication from the jury before dismissing the jury requires reversal and remand for new trial.[1]

## FACTS

In November 1978, Paula Newman was tried for nine misdemeanor counts of operating a physical culture studio without a license and one misdemeanor count of providing massage services without a masseuse permit. Newman was convicted on the nine counts of operating a physical culture studio without a license, but acquitted of providing massage services without a masseuse permit.

During that trial, the defense presented evidence that Newman had not violated the licensing ordinance. Newman stated that she operated a social club called the Barbary Coast. She asserted that the club leased massage facilities to individual masseuses who paid rent. Newman contended she was not required to obtain the physical culture studio license as she was merely a lessor. Instead, the individual masseuses were required to be licensed.

One of Newman's employees, Deborah Wrenn, testified at trial that she leased part of the Barbary Coast's premises. The defense introduced rent receipts as evidence that Wrenn and two other masseuses had paid $600 per month rent to Newman.

---

1. We do not decide the issue of whether the trial court erred in refusing to allow Newman's attorney to withdraw. This has become a moot point as Newman is free to choose who will represent her at her new trial.

Also, since we are granting a new trial, it is unnecessary to reach the question of whether alleged threats by Don White were improperly admitted against Newman.

Following Newman's testimony, Deborah Wrenn retook the stand as a rebuttal witness for the Municipality. She admitted that her earlier testimony was false, that she had no lease with Newman, and that she had never paid Newman rent. The rent receipts were false.

Newman was subsequently indicted for two counts of offering false evidence (the written lease with Deborah Wrenn and the rent receipts), and was also indicted for three counts of perjury.

The prosecutor at Newman's first trial, Allen Bailey, testified at the grand jury proceedings on the perjury charges. He basically outlined the November 1978 trial testimony. He testified that Wrenn had told him that she had lied on the stand. Transcripts of Newman's trial were marked as grand jury exhibits during Bailey's testimony and were made available to the grand jury during their deliberations.

Deborah Wrenn, Mary Keelan (another masseuse who testified at the trial for Newman), and Newman's attorneys during the November 1978 trial, Mitchell Schapira and Edgar Boyko, also testified before the grand jury. Schapira had originally handled Newman's case, but prior to trial Boyko stepped in to handle the trial. Both attorneys testified about many matters that were unrelated to Newman's misdemeanor trial and in general assured the grand jury that they had nothing to do with any perjury or introduction of false evidence.

In January and February 1980, Newman came to trial on the perjury and offering false evidence charges. During this trial, the prosecution introduced evidence that Don White had threatened to kill Valerie Cornell, one of Paula Newman's masseuses. (The prosecution referred to White as Newman's boyfriend.) This evidence was admitted over an objection.

Either prior to or immediately following the jury's verdict in the perjury trial, the court received a communication from the jury that they felt threatened by the presence of Don White. At least one juror asked for an escort to her car after the jury rendered its verdict. There is no record that Judge Lewis informed Newman's counsel, Pat McKay, of the jury's communication. Apparently McKay first learned of the communication when the jury was leaving the courtroom after the verdict. At that point, he heard Judge Lewis say, "Madam Foreman, the security matter you inquired about has been taken care of."

Newman was convicted on all counts and now appeals.

## SUFFICIENCY OF THE EVIDENCE PRESENTED TO THE GRAND JURY

Newman contends that the indictment was based on evidence improperly presented to the grand jury, and that Judge Victor Carlson erred by denying her motion to dismiss the indictment. She challenges the evidence on several grounds: (1) Alaska Rule of Evidence 1002, the "Best Evidence Rule," was violated when prosecutor Bailey related to the grand jury a summary of the testimony of the misdemeanor trial; (2) a statement of the law by prosecutor Bailey was error because it constituted an instruction on the law by a witness. Newman also claims the statement was derogatory because it referred to "massage parlors" rather than to "physical culture studios;" (3) the prosecution presented improper hearsay evidence to the grand jury; (4) the prosecution presented improper character evidence to the grand jury; and (5) the attorney-client privilege was violated when attorneys Schapira and Boyko testified about confidential discussions with Newman at the grand jury proceedings. We find the first two arguments without merit.[2] The other

---

2. Assuming that a witness' summary of testimony at trial constitutes a violation of Alaska Rule of Evidence 1002, we note that the transcript of the trial was presented to the grand jury and the jurors were instructed to make their findings based on that transcript rather than on Bailey's testimony. And, while it is true that prosecutor Bailey did, in effect, instruct the jurors on the law, it is also true that this was in response to a question by one of the jurors and that statement was accurate and not prejudicial. Moreover, we conclude that the

three grounds, however, deserve consideration.

## Hearsay Evidence

■ Several Alaska Supreme Court cases discuss the improper presentation of hearsay evidence to the grand jury. In determining whether to dismiss an indictment because of the introduction of inadmissible hearsay evidence, the court must "evaluate the strength of the remaining testimony and the likely importance of the hearsay testimony to the grand jury." *Frink v. State,* 597 P.2d 154, 161 (Alaska 1979). *See also Oxereok v. State,* 611 P.2d 913, 916 (Alaska 1980); *Metler v. State,* 581 P.2d 669, 674 (Alaska 1978). If a misrepresentation of fact is presented to the grand jury, the indictment will be dismissed if the misstatement would substantially affect the grand jury's conclusion. *Keith v. State,* 612 P.2d 977, 980–81 (Alaska 1980).

■ In deciding whether the presentation of improper evidence to a grand jury requires dismissal of the indictment, it is first necessary to decide whether there is sufficient admissible evidence to support the indictment. This is true, whether the challenged evidence is hearsay, character, or privileged information. If there is sufficient admissible evidence then it is necessary to evaluate the challenged evidence to determine whether it "appreciably affect[ed] the outcome of the grand jury's deliberations." *Oxereok v. State,* 611 P.2d at 916.

■ We hold that the testimony of Deborah Wrenn and Mary Keelan was sufficient to support the indictment. Alaska R.Crim.P. 6(q). We further hold that the challenged evidence was not critical to the decision to indict. *Frink v. State,* 597 P.2d at 163.

## Character Evidence

■ Newman believes that several factors improperly bolstered the credibility of Deborah Wrenn. We conclude that these factors did not materially affect the deliberations of the grand jury. Newman correctly points out that Officer Daniel Weatherly's testimony relating to the handwriting expert's conclusion that the signature on the recent receipts was not that of Deborah Wrenn was improper hearsay.[3] However, we note that there was strong support for Wrenn's claim that she did not sign the receipt since her name was incorrectly spelled. (She spells her name Deborah and the receipt was signed Debra.)[4]

■ Newman contends that the state improperly presented the grand jury with evidence of Wrenn's good character by showing that she had been working for the troopers. Newman argues that admission of this evidence tended to improperly strengthen Wrenn's credibility and portray her as a reliable witness. She claims that once this evidence came before the grand jury, the state was obligated to present evidence that Wrenn formerly had been a prostitute because the state has a duty to present exculpatory evidence. *Frink v. State,* 597 P.2d at 164; Alaska R.Crim.P. 6(q). We doubt that Wrenn's past occupation qualifies as exculpatory evidence as far as Newman's case was concerned. In any event, attorney Boyko testified that Wrenn agreed to change her testimony in order to get the charges against her dismissed. Similarly, attorney Schapira testified that Wrenn was "getting something for her testimony." We find that there was ample testimony from which the jurors could infer that Wrenn was not an unbiased, reliable and credible witness.

■ Newman also argues that the testimony of both attorneys contained many derogatory references to Newman amounting to evidence of bad character. While

term "massage parlors" was not derogatory in context.

**3.** We do not discuss the rest of the hearsay testimony as we find it to be minimal, cumula-

tive, and peripheral. *Webb v. State,* 527 P.2d 35, 36 (Alaska 1974).

**4.** Mary Keelan testified that her name was spelled incorrectly on the receipt as well.

certain statements may have been inappropriate, we cannot say that when viewed in context their presence was material to the decision to indict. We note that some of Boyko's testimony was favorable to Newman. He stressed the absurdity of resorting to perjured testimony to avoid paying a small misdemeanor fine and also emphasized that Newman's prior trial did not involve charges of prostitution.

### Attorney-Client Privilege

Newman further contends that the testimony of both attorneys contained privileged information. The record does not support this claim.

Having reviewed the grand jury testimony in its totality, we conclude that the challenged evidence "did not appreciably affect the outcome of the grand jury's deliberations." *Oxereok v. State,* 611 P.2d at 916.

### COMMUNICATION WITH THE TRIAL JURY

Newman claims that it was error for Judge Lewis to fail to notify her attorney of the jurors' communications regarding their fear of Don White.[5]

A defendant has the right to be present at every stage of the trial and to be notified of any communications from the jury. *Dixon v. State,* 605 P.2d 882, 884 (Alaska 1980); Alaska R.Crim.P. 38(a).[6] *See also Cox v. State,* 575 P.2d 297, 300–01 (Alaska 1978) (trial court's *ex parte* denial of jury request to hear playback of witness testimony was denial of defendant's right to be present at every state of the trial). A

failure to notify the defendant of any jury communication amounts to constitutional error requiring reversal of a conviction unless the court determines that the error is harmless beyond a reasonable doubt. *Dixon v. State,* 605 P.2d at 884; *Richardson v. State,* 579 P.2d 1372, 1373 (Alaska 1978).

In *Dixon,* after beginning deliberations, the jury sent a note to the judge requesting a playback of certain testimony. The judge returned the note to the jury without notifying or consulting the defendant or counsel for either side. In holding that such a failure constituted reversible error, the court stated that defendant and counsel "should be allowed to consult with the trial court and to offer comments, suggestions, and objections to guide both the substance and phrasing of the court's response to the jury's request." *Dixon v. State,* 605 P.2d at 887. Due process requires that the court allow the defendant, with the assistance of counsel, input into the information and instructions given by the trial judge to the jury during its deliberations. *Id.* at 889 n. 17.

Newman has suggested a number of actions that her counsel could have requested had the court properly informed him of the communication.[7] We do not decide whether the precautions suggested would have been proper or realistic. We are not required to "conjure up possibilities of prejudice." Preservation of Newman's fundamental right to be present "should not depend on the imaginative abilities of appellate judges." *Richardson v. State,* 579 P.2d at 1374 (quoting *R.L.R. v. State,* 487 P.2d 27, 43 (Alaska 1971)).

---

**5.** The state argues that if the communication from the jury came just after the jury notified the court that it had reached a verdict, rather than just before, there would be no claim of error as the trial would have been over. We note, however, that a trial is not over until a verdict has been delivered and accepted by the court. *See Gravel v. State,* 499 P.2d 1022, 1024 (Alaska 1972).

**6.** Alaska Rule of Criminal Procedure 38(a) provides:

The defendant shall be present at the arraignment, at the preliminary hearing, at the time of plea, at the omnibus hearing, and *at every stage of the trial,* including the impaneling of the jury and return of the verdict, and at the imposition of sentence, except as otherwise provided in this rule.
(Emphasis added.)

**7.** For example, counsel could have requested that the jury be polled to determine the precise basis for their fears of White and whether it constituted extraneous prejudicial information. *See* Alaska R.Evid. 606(b).

 The court's failure to notify the defense of the note from the jury was error. *Wamser v. State,* 652 P.2d 98 (Alaska 1982). A new trial is required.

We REVERSE the conviction and RE-MAND this case to the superior court for a new trial.