William Roy STAPLETON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–127.

Court of Appeals of Alaska.

March 1, 1985.

Tina Kobayashi, Asst. Public Defender, and Dana Fabe, Public Defender, Anchorage, for appellant.

Robert D. Bacon, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Norman C. Gorsuch, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

SINGLETON, Judge.

After a jury trial, William Roy Stapleton was convicted of assault in the second degree. AS 11.41.210(a)(1). Stapleton appeals alleging two errors. First, Stapleton argues that the trial court erred in giving a coercive instruction to a deadlocked jury. Second, he contends the trial court erred in instructing the jury regarding self-defense. Stapleton contends that the trial court erred in rejecting Stapleton's proposed instruction which would have told the jury that there is no duty to retreat before using deadly force if a person is attacked on premises which are leased or rented to him and he is not the initial aggressor. *See* AS 11.81.335(b)(1). We affirm.

## FACTS

On December 10, 1982, Yohannes Mesfine was the desk clerk at the Fireweed

Hotel in Anchorage. Stapleton, a cabdriver, was a long-term resident there, and at one time had been the desk clerk. On the afternoon of December 10, Mesfine went to the television lounge where Stapleton was watching television and asked Stapleton to come to the hotel office. Mesfine was upset because he believed that Stapleton had talked to the hotel manager about Mesfine mistreating guests. They went to the office and spoke heatedly. Stapleton told Mesfine that he was inefficient and that Stapleton could get Mesfine's job if Stapleton wanted it. Stapleton left and returned to the television lounge. Mesfine followed Stapleton back to the television lounge and called him a bastard. Stapleton got angry and came out of the television lounge. They both went back to the office. When Stapleton asked Mesfine what he had called Stapleton, Mesfine repeated it. One of them, though it is unclear which, asked the other if he wanted to go outside and finish this discussion. Stapleton testified Mesfine said it; the only witness, Mr. Schindler, testified he did not know which one said it. Stapleton left the office, but returned quickly. There are three different versions of what happened next: Stapleton's, Mesfine's, and Schindler's.

Stapleton testified that he returned to see if they could "buffer this off." He said that as he got to the office, Mesfine whirled toward him with something in his left hand. Stapleton said he thought it was a gun or knife because of Mesfine's attitude. Stapleton said that he was aware that prior employees sometimes kept a gun under the counter and a former desk clerk so testified. Stapleton stated that he shot Mesfine without waiting, as Stapleton could not have gotten out the door without the risk of being shot or knifed, and that he shot to protect himself. However, when Stapleton made a statement at the police station, he said Mesfine raised his fists at him. Stapleton did not mention any weapon to the people at the scene or to the police. He threw the gun over the fence behind the hotel because he was "scared and confused." The gun was never found.

Mesfine testified that after Stapleton left, he went back to his regular work. He marked something on the calendar and was about to sit down when Stapleton returned. Mesfine stated that Stapleton came in, neither of them said anything, and Stapleton pulled out a gun and shot him. Mesfine testified that there was no gun in the office.

Schindler, a hotel resident and desk clerk, testified that he went out into the hall after Stapleton went toward the office the second time, as Schindler thought there would be some physical contact between Stapleton and Mesfine. He saw Stapleton pull a gun from his pocket and shoot in the direction of Mesfine. Schindler also said that Mesfine and Stapleton were talking again before the shot. Schindler entered the office immediately after the shooting and found Mesfine sitting in the corner in his chair holding his arm. Schindler testified that immediately after shooting Mesfine Stapleton said, "There, how do you like that?"

At trial, defense counsel requested an instruction that there is no duty to retreat before using deadly force if the person is on premises which are leased or rented to him and he is not the initial aggressor. See AS 11.81.335(b)(1). He reasoned that it was a question for the jury whether the shooting occurred on premises leased to Stapleton. The court refused this instruction, instructing instead that there is a duty to retreat before using deadly force. See AS 11.81.335(b). The court concluded that the hotel office was not within the premises leased to Stapleton.

The jury began deliberating about 4:30 p.m. on April 12, 1983. It recessed at 8:00 p.m. and resumed around 9:00 a.m. on April 13. About 10:50 a.m. the jury indicated that it was split seven to five and it had been since 7:00 p.m. on April 12. Defense counsel objected to Judge Buckalew's proposed remark that if the jury could not reach a verdict, the trial would have to be started over. Counsel reasoned that informing the jury that another jury would have to decide the case was not an appro-

priate charge. The judge said that he would ask the jury if it was deadlocked and tell it that it should deliberate some more. When the jury came in, Judge Buckalew said:

> THE COURT: Let's see, Mr. [Foreman], I have your note here which indicates that the jury is having some problems resolving this case. Of course both counsel have copies of the note. My first observation is this, is that you haven't been out too long on this case, and somewhere along the road, twelve people are going to have to decide this issue, and I'm of a mind to direct you to go out and give it one more attempt and see if you can resolve it.
>
> THE FOREMAN: We're willing to do that if you want us to, Your Honor. The chances are very slim.
>
> THE COURT: Well, even if they're—if there's a slim chance, I think I ought to require you to take another look at it. I've instructed you the purpose of a jury trial is to resolve and decide an issue and in this kind of case, the trial jury is the only one in—it's the only body in the world that can decide this matter. I can't decide it, the attorneys can't decide it. Twelve jurors are hopefully—I hope they can decide it and I'm sure that the jurors have discussed the facts with one another, listened to the arguments of the other jurors and the positions of the other jurors and I'm going to respectfully ask you to go out and give it another whirl.
>
> THE FOREMAN: All right. We'll (indiscernible—simultaneous speech).....
>
> THE COURT: And maybe have lunch, maybe if you have a good lunch and come back after lunch and take another look at it, and if you can't decide it, why, you can't decide it, and I've instructed the jurors that the purpose of the jury system is to settle an issue and I've further instructed you that if you can't do it without giving up your conviction simply to reach a verdict, I instruct you you're not to do that, so—but I hope that you can resolve this issue, so you can talk to Miss Capca (ph) about—how does

that sound? Are you willing to have lunch and take another look at it?

> THE FOREMAN: We'll do that.
>
> THE COURT: All right. Thank you very much then.

After the jury left, defense counsel noted on the record his objection to Judge Buckalew's remark about twelve people having to decide this issue.

## DISCUSSION

### I.

Stapleton first argues that the trial court erred by indicating to the jury that the case would have to be retried if the jury failed to reach a verdict. Stapleton contends that this instruction was coercive and should not have been given.

In *Fields v. State,* 487 P.2d 831, 835–43 (Alaska 1971), the supreme court considered and disapproved the so-called "Allen charge" previously given to deadlocked jurors. The *Fields* court went substantially beyond rejecting the Allen charge, however, and specifically considered what instructions, if any, should be given a deadlocked jury regarding further deliberation. The court concluded:

> The use of a properly circumscribed supplemental instruction following a deadlock somewhat similar to the one given in the present case may serve a beneficial purpose in the adjudication of cases. However, having considered the Allen charge, we conclude that it is time to adopt a new and less objectionable instruction. We direct that in the future trial courts comply with the standards recommended by the American Bar Association Project on Minimum Standards of Criminal Justice....
>
> This procedure [instructing the jury in accordance with the ABA Standards] was recently adopted by the Seventh Circuit ... and the District of Columbia Circuit.... [Citations omitted.] This approach impresses the jurors at the outset with the magnitude of their duties while, at the same time, it provides a balanced

instruction. It does not tend to place the holders of a minority viewpoint in a vulnerable position and is comparatively free of coercive language. With these benefits in mind, we find it significant that the American Bar Association Project set out in its commentary an illustrative instruction which it considered consistent with the standard. We suggest that when a trial judge is faced with an apparently deadlocked jury the recommended instruction be considered. This approach will yield uniformity and predictability, and should eliminate appeals based upon technical variations in language.

487 P.2d at 842.[1] The *Fields* court clearly told trial judges what they should do in dealing with deadlocked juries. We are satisfied that the *Fields* court meant to encourage compliance with the ABA Standards and discourage novel and possibly coercive instructions to apparently deadlocked juries. We thus find implicit in *Fields* a provision found explicit in Washington Criminal Rule 6.15(f)(2):

> After jury deliberations have begun, the court shall not instruct the jury in such a way as to suggest the need for agreement, the consequences of no agreement, or the length of time a jury will be required to deliberate.

■ We therefore agree with Stapleton that a deadlocked jury should not be told that "somewhere along the road twelve people are going to have to decide this issue." *See also People v. Barraza,* 23 Cal.3d 675, 153 Cal.Rptr. 459, 591 P.2d 947 (1979). We do not adopt a *per se* rule of reversal, however. *See Barraza,* 153 Cal. Rptr. at 463–64, 591 P.2d at 951–52. If the statement were the central feature of the instructions Judge Buckalew gave the deadlocked jury, we would be prepared to find a sufficient risk of harm to warrant reversal. In this case, however, the jury had been properly instructed in accordance with the ABA Standards and in his comments Judge Buckalew directed the jury's attention to the central theory of that ABA instruction—that a juror should not acquiesce in a verdict if, in so doing, he has to give up his convictions. The language criticized was only part of a larger statement which paraphrased the ABA Standards. Under the circumstances we find any error harmless.

## II.

■ Stapleton concedes that shooting Mesfine with a handgun constituted the use of "deadly force."[2] He next argues that he was a permanent resident of the Fireweed Hotel, that many of the guests lived at the hotel and considered parts of the hotel other than their individual rooms part of their home, and that there was no evidence presented at trial that guests in the hotel were forbidden to enter the office area. Consequently, Stapleton contends

---

1. The ABA recommended instruction which was set out in *Fields* provides as follows:

The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors,

or for the mere purpose of returning a verdict.

You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case.

487 P.2d at 842–43 (footnote omitted).

2. Alaska Statute 11.81.900(b)(12) provides:

"deadly force" means force which the person uses with the intent of causing, or uses under circumstances which he knows create a substantial risk of causing, death or serious physical injury; "deadly force" includes intentionally discharging or pointing a firearm in the direction of another person or in the direction in which another person is believed to be and intentionally placing another person in fear of imminent serious physical injury by means of a dangerous instrument....

that whether the office area should be considered part of the premises rented to him was a factual question for the jury to determine and that the trial court erred in not specifically instructing the jury to this effect. He relies on AS 11.81.335.[3] In *Weston v. State*, 682 P.2d 1119, 1121 (Alaska 1984), the supreme court held that a self-defense instruction must be given if there is some evidence from which a reasonable juror could entertain a reasonable doubt as to the defendant's guilt. Stapleton argues that the same rule should apply to limitations on the defense and that if there was some evidence from which the jury could infer that he had a right of access that the premises were leased to him. We disagree.

■ We are satisfied that the legislature did not intend to permit someone to stand his ground and use deadly force in a hotel office if he had a reasonable opportunity to retreat. The duty to retreat exists in many places where a person has a legal right to be. The only exception is for premises owned or leased by a person. Stapleton neither owned nor leased the hotel office. We therefore affirm Judge Buckalew's decision.[4]

The judgment of the superior court is AFFIRMED.

---

3. Alaska Statute 11.81.335 reads in pertinent part:

    *Justification: Use of deadly force in defense of self.*

    . . . . .

    (b) A person may not use deadly force under this section if the person knows that, with complete personal safety and with complete safety as to others, the person can avoid the necessity of using deadly force by retreating, except there is no duty to retreat if the person is

    (1) on premises which the person owns or leases and the person is not the initial aggressor. . . .

4. We note in passing that Stapleton's theory of defense was that he shot Mesfine on the mistaken assumption that Mesfine had a gun in hand and was prepared to shoot Stapleton. If the jury believed Stapleton he, of course, had no opportunity and therefore no duty to retreat. If the jury believed other evidence, it could have found that Stapleton had the opportunity to retreat into the television room.