NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter.* *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

SEAN ALLEN CARPENTER,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12045
Trial Court No. 3PA-14-1297 CR

O P I N I O N

No. 2577 — December 8, 2017

Appeal from the District Court, Third Judicial District, Palmer, David L. Zwink, Judge.

Appearances: Josie Garton, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Raymond E. Beard, Assistant District Attorney, Palmer, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge ALLARD.

Sean Allen Carpenter was charged with fourth-degree assault for allegedly hitting his elderly mother. Five hours into the jury deliberations on this charge, the jury

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

sent a note to the judge indicating that they were hung. The trial judge did not notify the parties of this note. Instead, on his own initiative, the trial judge engaged in a series of ex parte communications with the jury, ultimately informing them that they could return after the weekend to continue their deliberations, or they could continue to deliberate that night *if* they believed that they would be able to come to a final verdict within the next twenty-five minutes. The jury indicated that they wished to continue to deliberate that night. Less than five minutes before the deadline, the jury returned a guilty verdict on the fourth-degree assault charge.

On appeal, Carpenter argues that the judge's ex parte communications with the jury violated his constitutional rights and may have had a coercive effect on the jury. The State concedes that the judge's ex parte communications constituted constitutional error, but the State argues that the error was harmless beyond a reasonable doubt.

For the reasons explained here, we conclude that the judge's ex parte communications with the jury, after the jury had declared itself hung, were not harmless beyond a reasonable doubt, and that reversal of Carpenter's conviction is therefore required.

*Background facts and procedural history*

Sean Carpenter was charged with fourth-degree assault for allegedly striking his seventy-year-old mother in the face. At trial, Carpenter testified that he did not hit his mother and that his mother was injured by accident when he leaned on a table, causing one end to fly up and strike her in the cheek. Carpenter also testified that his mother was confused about what happened and that her mental health had been deteriorating in recent years.

Carpenter's trial began on a Thursday morning and the jury began deliberating on the case around 11:00 a.m. the following day (Friday). At 4:15 p.m.,

approximately five hours into its deliberations, the jury sent a note to the judge stating, "We are hung."

The trial judge did not notify the parties of the jury's note or of their reported status. Instead, the judge engaged in a series of ex parte written communications with the jury. The exact timing of these communications is slightly unclear because the communications were written on the same sheet of paper and only some of the communications were properly time-stamped. Here is the sequence of communications, as best we can tell.

At 4:15 p.m., the jury sent its note stating, "We are hung." At 4:19 p.m., the judge returned the note with a handwritten response stating "[d]o you think taking the weekend off [and] coming back fresh on Monday may help your progress?" The jury appears to have responded to the judge's question with the statement "We will stay."

(Because the jury did not time-stamp this response, and because the record does not otherwise indicate when it occurred, it is possible that the jury's statement "We will stay" was sent at the same time as its response to the judge's later 4:34 p.m. communication. In either case, however, our analysis of the judge's ex parte communications remains the same. We nevertheless take this opportunity to remind trial judges that all substantive communications with a jury must be properly memorialized in the record.)

At 4:34 p.m., the judge, seemingly on his own initiative, sent a second ex parte communication to the jury. This communication informed the jury that:

> We can let you deliberate only until 5 p.m. tonight. I do not want you to feel rushed into reaching a verdict. If you believe that you can [reach a verdict] by 5 p.m., then you may continue now. If you feel that is not enough time, then please let me know [and] we will reconvene on Monday morning. Thank you.

The jury then responded "We think we will make one by 5 p.m."

At 4:55 p.m., five minutes before the deadline set by the court, the jury sent a new note indicating that it had reached a verdict. The court contacted the parties, who returned to court to hear the verdict. The jury then announced that it had reached a guilty verdict on the fourth-degree assault charge.

This appeal followed.

*The trial judge committed constitutional error by engaging in ex parte communications with the jury*

Under both the United States Constitution and the Alaska Constitution, the defendant has the right to be present at every stage of the trial.[1] The right to be present includes the right to be notified of any communication with the jury.[2] A trial court's "[f]ailure to notify the defendant of a jury communication is constitutional error that requires reversal on appeal unless the error is found harmless beyond a reasonable doubt."[3] The State bears the burden of proving that any ex parte communication with the jury was harmless beyond a reasonable doubt.[4]

---

[1]  *See Dixon v. State*, 605 P.2d 882, 884 (Alaska 1980); *see also Raphael v. State*, 994 P.2d 1004, 1013 (Alaska 2000); *Wamser v. State*, 652 P.2d 98, 101-02 (Alaska 1982); *Cox v. State*, 575 P.2d 297, 300-01 (Alaska 1978); *Jones v. State*, 719 P.2d 265, 266 (Alaska App. 1986); *Newman v. State*, 655 P.2d 1302, 1307 (Alaska App. 1982); *see also* Alaska R. Crim. P. 38(a).

[2]  *Jones*, 719 P.2d at 266 (internal citations omitted).

[3]  *Id.* at 266-67 (internal citations omitted).

[4]  *Id.* at 267.

Here, the State concedes that the trial judge's ex parte communications with the jury constituted constitutional error. This concession is well-founded.[5] The only remaining question, therefore, is whether the judge's actions were harmless beyond a reasonable doubt.

*The ex parte communications with the jury were not harmless beyond a reasonable doubt*

To determine whether a judge's ex parte communication with a jury was harmless beyond a reasonable doubt, we must consider the type of action taken by the court, and the effect of the defendant's absence on that action, rather than on the propriety of the action itself.[6] A trial court's failure to notify the defendant of a jury note is not harmless beyond a reasonable doubt in cases where the defendant's participation "could have had an impact on the decisional process"[7] and where the defendant could have "offer[ed] comments, suggestions, and objections [that might have] guid[ed] both the substance and phrasing of the court's response to the jury."[8]

Here, the judge's ex parte communication with the jury occurred in response to the jury's declaration that it was hung. This was critical information about the jury's deliberations that should have been immediately communicated to the defense attorney so that the defense attorney could take appropriate action to protect the

---

[5] *See Marks v. State*, 496 P.2d 66, 67-68 (Alaska 1972) (requiring an appellate court to independently assess any concession of error by the State in a criminal case).

[6] *See Jones*, 719 P.2d at 267.

[7] *Raphael*, 994 P.2d at 1013 (citing *State v. Hannagan*, 559 P.2d 1059, 1065 n.20 (Alaska 1977)).

[8] *Jones*, 719 P.2d at 267 (quoting *Wamser*, 652 P.2d at 101-02); *see also Dixon*, 605 P.2d at 888.

defendant's rights — such as moving for a mistrial or objecting to the court's proposed response to the jury's announcement.[9]

As Alaska caselaw makes clear, communicating appropriately with a potentially hung jury is no easy task.[10] Among other things, the judge must be careful to avoid instructions that could be viewed as coercive or that might disadvantage jurors in the minority position.[11] The judge must also avoid any suggestion that the jurors should reach a verdict based on anything other than the evidence and the arguments presented to them in open court.[12] The input of the parties is therefore not only required by law, but also likely to be distinctly helpful to the trial judge in avoiding these pitfalls.[13]

The danger of ex parte communication with a hung jury is evidenced by what occurred in this case. Although it is clear that the judge did not intend for his ex parte communications with the jury to be coercive, there is certainly a reasonable possibility that they were viewed that way by individual jurors. The judge told the jurors that he did not want them to feel "rushed into reaching a verdict," but the judge also presented the jurors with only two options: (1) they could stop deliberating and commit

---

[9] *See Wamser*, 652 P.2d at 101-02; *see also Dixon*, 605 P.2d at 887 (holding that even a jury's request to review evidence "raises questions of great importance to a criminal defendant's rights, as it generally reflects doubt or disagreement on the part of at least some jurors as to the nature of evidence presented at trial.").

[10] *See, e.g., Fields v. State*, 487 P.2d 831, 842 (Alaska 1971); *Stapleton v. State*, 696 P.2d 180 (Alaska App. 1985); *see also* 6 Wayne R. LaFave, *Criminal Procedure* § 24.9(d), at 674-78 (4th ed. 2015).

[11] *See Fields*, 487 P.2d at 841-42.

[12] *See id.* at 838 n.12.

[13] *See Dixon*, 605 P.2d at 888 (emphasizing that "adversarial scrutiny" of a judge's proposed response to a jury note is both useful to the judge and necessary under the law).

to returning the following week (thereby inconveniencing themselves and their fellow jurors); or (2) they could continue to deliberate — but only if they believed that they could reach a verdict within the next twenty-five minutes. The jury chose the second option and, true to its word, returned a verdict twenty-one minutes later (just before the deadline imposed by the judge). Had Carpenter and his attorney been present when the court's response to the jury note was being formulated, there is a significant chance that a more appropriate and less coercive communication would have been sent to the jury.

Because it was constitutional error for the court to engage in communications with the jury without Carpenter's knowledge or participation, and because it cannot be said that the error was harmless beyond a reasonable doubt given the nature of the ex parte communication and the circumstances under which it occurred, we conclude that reversal of Carpenter's conviction is required.

*Conclusion*

We REVERSE the judgment of the district court.